## Marmaduke, Executrix, *v.* Brown.

*Partnerships—Liquidation—Accounting—Good will.*

1. Good will is property under certain circumstances; where, however, the members of a firm are all brothers and the firm name is that of the father, and where one partner dies leaving to survive him two brothers who undertake to liquidate the partnership, the surviving members of the firm cannot be charged with good will based on the business of the company for a number of years previous to the deceased brother's death.

2. In a suit in equity to compel the liquidating partners of a firm which had been composed of three brothers one of whom died, to account to the executrix of the deceased brother for such decedent's share of the partnership assets, the lower court properly charged the defendants with the rent of the real estate which had belonged to the firm, with accounts owing the firm, and properly refused to charge the defendants with the good will of the business, although subsequent to the death of plaintiff's decedent they had conducted the business under the firm name, where it appeared that by so conducting the business the rent from the property had been increased.

Argued April 18, 1916.    Appeals, Nos. 172 and 170, Jan. T., 1915, by plaintiff and defendant, from decree of C. P. Huntingdon Co., Dec. T., 1910, No. 169, on bill in equity for an accounting, in case of Frances Marmaduke, executrix of the last will and testament of John A. Brown, deceased, and Frances Marmaduke, individually, v. Harry Brown and Louis R. Brown, surviving partners of the firm of Philip Brown's Sons; and Harry Brown and Louis R. Brown trading and doing business as Philip Brown's Sons; and Harry Brown and Louis R. Brown, individually.    Before BROWN, C. J., MESTREZAT, POTTER, FRAZER and WALLING, JJ.    Appeals dismissed.

Exceptions to report of master.

The facts appear in the following opinion of WOODS, P. J., dismissing exceptions to the master's report:

As can be seen by the number this case bears, it began over four years ago.    The delay in its determination may

have been caused by a number of circumstances. Considerable litigation arose between the parties in this bill, some of which are now in the higher courts for consideration.

The bill was presented by the widow of one of the partners of the firm of Philip Brown's Sons doing business in Huntingdon, Pennsylvania. The firm was originally composed of four brothers, all sons of Philip Brown: Harry, Louis R., John A. and Edward. Edward died, leaving the firm composed of the remaining three brothers, and the business still being in the name of Philip Brown's Sons. John A. Brown, the husband of the plaintiff to this bill, died September 30, 1909, leaving a will, by which his widow, the plaintiff, became sole legatee of his interest in his estate. The bill was filed November 12, 1910, by the widow, who in the meantime had again married and removed to another state, asking for an accounting of the surviving partners of her former husband in the business, as set forth in the bill and answer, which answer was filed December 10, 1910. The records show that a master was appointed October 7, 1911, to hear the parties, find the facts and to state said account.

As stated above, considerable litigation arose between the parties, which has delayed the settlement of this case.

The master filed his report on July 28, 1914, to which a large number of exceptions had been filed. The court heard the argument on the exceptions sometime in the month of December, 1914, and the papers came into our hands about four weeks ago.

The defendants complain as to the findings of the auditor and especially direct our attention to the charges made by him. We have given this matter very full and careful consideration, reading and examining the evidence with care, and considering the law as applicable to the questions involved.

The master allowed all claims of the plaintiff and charges the defendants with a large sum of money, in-

cluding an item of good will, which he placed at $12,-813.84. In arriving at this amount he depended upon the one witness, an accountant from Baltimore, Maryland, by the name of Edward Fuller, who took the books of the business conducted by the firm and arrived at an average on a number of years. This is the largest item except one, which the master holds the liquidating partners accountable. The largest item is the accounts receivable, which reaches $19,435.87.

The master allows the plaintiff for the rents of the real estate which belonged to the firm and which included certain houses located in Huntingdon, also the large building in which the business was conducted by the firm. He also allows certain other items, amounting in all to $45,692.42, giving to the widow the salary to which he adds interest, amounting to $483.75, and then awards to her as executrix and individually the one-third of the balance.

After an examination and consideration of the master's report, we confirm his findings in all except the item of good will, and in this we cannot agree with him.· In his discussion of the question of good will he states, "As a general proposition of trade, it is a fact of common knowledge that there exists an intangible asset to every going business, the value of which is frequently most difficult to determine, and it is often open to dispute. This is known as good will."

The master then determines the question upon the testimony of one witness, who is an expert accountant, and who, after examining the books of the firm, concluded from the amount of business done within a certain number of years that the good will of the firm was of the value of $12,813.84.

The circumstances surrounding each business should be taken into consideration in determining the question of good will. The place or location where the business is carried on is one of the essential elements to consider in determining the question of good will. "In a mercantile

partnership the sale of the good will conveys an interest in a commercial business, the trade of which may be largely, if not wholly dependent upon locality, and the right which the vendee acquires under such a purchase is the chance of being able to retain the trade connected with the business where it has been conducted": Brown v. Benzinger, 118 Md. 29, 37.

Let us review the circumstances which attached to the business of Philip Brown's Sons. The partners were all three brothers and sons of Philip Brown, doing business at a place and in a building which belonged to the partnership as individuals. John A. Brown died and the burden of liquidating falls upon the two surviving brothers. It is for them to do the best they can in determining what each member of the firm is entitled to receive. The two brothers, sons of the same Philip Brown, continue in the business and at the same place. The firm of Philip Brown's Sons, in one sense of the word, neither loses nor gains by the death of John A. Brown, because Philip Brown's Sons still remain in the other two brothers at the same place of locality, and they are bound to account for the business. Shall they destroy the firm's name and thereby injure all parties concerned? The record shows the business was continued in with the consent of all, and all parties benefited thereby, until April 13, 1911, when by mutual consent the widow of John A. Brown sold her interest "in the said balance of the goods and chattels as contained in the said inventory," still leaving her interest in the real estate to be determined in the future.

The fact that the liquidating partners used the firm name of Philip Brown's Sons, of which they themselves were members, does not of itself conclude that they should account for the good will; they were and are the true Philip Brown's Sons, a name which they have a right to use, especially during the time they were disposing of the firm's personal property: Kaufmann v. Kaufmann, 239 Pa. 42.

The master allowed the plaintiff a certain sum which he found from the evidence was due her as rent from the real estate, rent for the store room in which the firm had been conducting the business for years. "A banking firm dissolved and appointed a partner to liquidate: On the dissolution, he commenced banking in the firm house on his own account under the firm name, and also settled the firm business there. Held, that under the circumstances he was not chargeable with the value of the good will": Musselman & Clarkson's App., 62 Pa. 81.

In the case just cited, the court said (p. 83): "But supposing the rule to be more extensive by usage with us, and I think it is, how can there be a good will of a business in favor of the members of a firm, where the firm has ceased by its own limitation, and no exclusive right to follow the business in that place belongs to them? In that case, as a distinct property, it is gone. It then attaches to and enhances the realty, and the value of it is realized in renting or selling that."

In the case at bar, Philip Brown's Sons increased both the rental and selling value of the real estate. The master allowed that increased rental value to be chargeable as an asset against the liquidating partners; and the plaintiff will benefit in the sale of the real estate increased by the Philip Brown's Sons having done business at that place and in that building. The court then adds in the case last cited: "Here the appellee is charged with the rental of the place, and in this was included, of course, all the advantages belonging to it as a site. "Good will" is "simply the probability that old customers will resort to the old place": Cruttwell v. Lye, 17 Ves. Jr. 335; White v. Trowbridge, 216 Pa. 11.

As we said above, good will is property in some circumstances, but where the members of the firm are all sons of the same father, and the firm name is that of the father, and where one dies leaving to survive him two brothers who undertake to liquidate and account to the widow of the deceased brother, they cannot be charged

with good will based on the business of the company for a number of years previous to the death, where the members of the firm have an equal share in the real estate in which the business is carried on, and when the widow sells and transfers her interest in the personal property to the remaining members of the firm within two years after the death of her husband. These, and other circumstances connected with this case, will not warrant the surviving partners being charged with good will, and that part of the master's report must be set aside.

The findings of the master as to the charge of rent is confirmed, as is also the charge of salary, accounts receivable, and goods sold. The item of interest was a proper charge under the evidence as developed in this case.

The liquidating partners would be entitled to a credit of one-third of the proper charges which were necessary to the settlement of the business. The evidence shows the employment of two clerks to assist in the settling of the accounts and sale of goods, and also for stamps and stationery.

We sustain the first, second, third, fourth, and fifth exceptions as to the item of good will.

Hereto attached find account stated as per above findings.　　　　　　　　　　J. M. Woods, P. J.

ACCOUNT STATED.

| | |
|---|---:|
| Rent of store and interest | $ 2,997.00 |
| Rent of houses and interest | 321.95 |
| Goods sold | 7,145.11 |
| Accounts receivable | 19,435.87 |
| Salary of John A. Brown, deceased | 483.75 |
| Beaver mortgage | 1,757.00 |
| Trimer judgment | 387.00 |
| Balance in First National Bank | 350.90 |
| | $32,878.58 |

Distributed as follows:

| Total amount for which the defendants are chargeable | $32,878.58 |
| Costs as shown by the masters' report | 629.00 |

$32,249.58

Costs of the liquidations:

| One-third of salary of W. L. Johnson | $315.33 | |
| One-third of salary of Mr. Fluke .. | 253.33 | |
| Postage, etc. | 18.00 | |
| | | 586.66 |

$31,662.92

Distribution:

| To the widow of John A. Brown, salary | $483.75 | |
| One-third John A. Brown's estate | $10,393.05—2-3 | |
| L. & H. Brown | $20,786.11—1-3 | |
| | | $31,662.92 |

The court dismissed the exceptions. Plaintiff and defendant appealed.

*Errors assigned* were in dismissing the exceptions.

*William Wallace Chisolm,* for Frances Marmaduke, executrix.

*H. H. Waite,* with him *Howard L. Henderson,* for Harry Brown and Louis R. Brown.

PER CURIAM, May 15, 1916:

The bill of the complainant was for an accounting, and both she and the defendants are dissatisfied with the decree made. The court below committed no error in refusing to charge the defendants with the value of the good will of the business, and what it has decreed they

shall pay is, under all the evidence, what they legally owe.

Each appeal is dismissed at appellants' costs.