Murray et ux. *v.* Philadelphia et al., Appellants.

Argued November 18, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Abraham Wernick*, Assistant City Solicitor, with him *Frank F. Truscott*, City Solicitor, for appellants.

*Albert Barnes Zink*, with him *George F. Shinehouse, Jr.*, for appellees.

*Robert Dechert*, with him *Francis L. Van Dusen* and *Barnes, Dechert, Price & Myers*, for Corporate Fiduciaries Association of Philadelphia, under Rule 61.

*Leslie M. Swope*, with him *Henry S. Drinker, Howard H. Yocum* and *Robert M. Blair-Smith*, for Investment Bankers Association et al., intervening appellees.

Opinion by Mr. Justice Linn, January 3, 1950:

This appeal by the city involves the application of the ordinance considered in *Breitinger v. Philadelphia*, argued immediately before this case, 363 Pa. 512, 70 A. 2d 640. The plaintiffs, husband and wife, filed their bill to restrain the collection of taxes on income received from certain transactions, contending that only earned income, as defined in the ordinance, was subject to the tax and that the income proposed to be taxed by defendants was not earned income within the terms of the ordinance.

Much that was said in disposing of the city's appeal in *Breitinger's* case is applicable in this case and need not be repeated. The chancellor, Kun, J., made findings of fact, among them, the following: "3. The plaintiff, Thomas J. Murray, is eighty-five years of age, and has been engaged in the haberdashery business at 4515 Frankford Avenue, Philadelphia, Pennsylvania, for a period of approximately sixty years. He has spent all his time in said business until approximately three years ago, when he became inactive by reason of his age. 4. The plaintiff, Thomas J. Murray, has not engaged in any business, trade, profession, activity or enterprise other than the haberdashery business. 5. The plaintiff, Kathryn M. Murray, is a housewife and is not engaged in any business. . . . 8. During the years 1939 to 1947, inclusive, the plaintiffs . . . owned premises 4613 and 4615 Frankford Avenue, and 4515 Frankford Avenue in the City of Philadelphia, all acquired by the plaintiffs in the years 1910 and 1911. 9. Premises 4613 and 4615 Frankford Avenue were each three story buildings, on lots approximately fifteen feet in width and one hundred nineteen feet in depth. Each building was occupied by one tenant. 10. Premises 4515 Frankford Avenue consisted of a one story building occupied by the plaintiff, Thomas J. Murray, as his haberdashery shop, and a small building on the rear

thereof, which was leased out to a tenant for storage space. 11. The plaintiffs furnished no heat, light, janitor or elevator service, or any other services, to the tenants occupying any of the leased property, and plaintiffs did not in any way operate said premises as business enterprises. 12. All that plaintiffs did with respect to the leased real estate was to collect the rents, pay the taxes, and maintain fire insurance thereon. . . . 14. In the year 1946 the plaintiff sold 4615 Frankford Avenue and realized a profit of $21,333.51; and in the year 1947 sold premises 4613 Frankford Avenue, and realized a profit of $23,911.90. 15. During the years 1939 to 1947, and for many years prior thereto, the plaintiffs had investments in stocks and bonds of an average value of approximately $150,000.00 consisting of between forty and fifty separate securities. . . . 18. All the plaintiffs' purchases and sales of securities, during the period 1939 through 1947, were made through Howard J. Lynch, a broker. The plaintiffs paid no fees or service charges of any nature to their broker, other than regular brokerage commissions. 19. For the years 1940 through 1947, inclusive, the plaintiffs averaged ten purchases per year, and slightly less than eleven sales per year, including purchases and sales in connection with the receipt and disposition of stock rights, stock dividends and securities called or redeemed. The foregoing number of transactions include as separate transactions sales executed on different dates pursuant to a single order. . . . 21. For the years 1941 through 1947, the plaintiffs received net profits from the sale of securities, in the amount of $26,807.63, or an average of approximately $3,840.00 per annum. 22. The plaintiffs rendered no labor or service in connection with their investments in real estate and securities other than that necessary to collect the rents, dividends and interests, order purchases and sales, and keep records for income

tax purposes. 23. For the years 1939 to 1943, inclusive, the plaintiff, Thomas J. Murray, disclosed on the schedule provided for non-taxable income on the Resident Individual Net Profits Tax Returns filed with the Receiver of Taxes, the gains and losses, and the rents, dividends and interest, as reported for Federal Income Tax purposes for said years. 24. On the Resident Individual Net Profits Tax Returns filed by the plaintiff, Thomas J. Murray, for the years 1939 to 1947, inclusive, no part of the rents, dividends, interest, or profits from the sale of real estate and securities were included in the taxable income of the said Thomas J. Murray, no tax was claimed by the City thereon, and no tax has been paid on such income and profits to the City of Philadelphia by the plaintiffs . . . 25. During the month of July, 1948, E. T. Clark, an auditor employed by the office of the Receiver of Taxes to make a special field audit, examined the Federal Income Tax Returns of the plaintiffs . . . and prepared a report showing the rents, dividends and interest received by the plaintiffs, for the years 1941 to 1947, inclusive, as well as the gains and losses during said years from the sale of real estate and securities. 26. No other investigation of the plaintiffs' activities, with respect to their investments in real estate and securities, was made by the auditor, or any other representative of the Receiver of Taxes, or the City of Philadelphia. 27. On or about August 8, 1948, the plaintiffs were served with forms entitled 'Philadelphia Income Tax Bureau—Income Changes and Recomputation of Tax', on which the net rents, dividends and interest, and gains and losses from real estate and securities, were set forth, and the tax for the years 1939 to 1947, inclusive, together with interest and penalty thereon computed and shown as 'Balance of Additional Tax Due'. 28. For the years 1939 and 1940 the net additional income was estimated in the amount of

$4,700.00 for each of said years. 29. The said forms of 'Income Changes and Recomputation of Tax' constitute the only purported assessment of tax. 30. The purported assessments above set forth were sent to the taxpayers after correspondence between the field auditor, the City Controller, and the City Solicitor's Office, in which the Assistant City Solicitor advised that the income and profits from real estate and securities constituted income from taxable activities within the meaning of the Philadelphia Net Profits Tax Ordinance, solely on the basis of the information derived from the plaintiffs' Federal Income Tax Returns."

The findings numbered from 8 to 12 inclusive and from 15 to 19, support the conclusion that plaintiffs were not engaged in "business, professions or other activities" within the meaning of the ordinance for the reasons stated in sustaining the injunction granted in *Breitinger's* case.

In the present case parts of certain regulations made by the Receiver of Taxes pursuant to section 6 [1] of the ordinance were considered and condemned by the decree.

The assistant city solicitor, in his statement of what he proposed to argue on this appeal, alleged that the court below erred in condemning Article II, subsection 3 (b) 3 and subsection 3 (d) 1 of the regulations.

---

[1] "Sect. 6. Enforcement; Rules and Regulations; Inquisitorial Powers of the Receiver of Taxes. A. The Receiver of Taxes is hereby charged with the enforcement of the provisions of this ordinance, and is hereby empowered to prescribe, adopt, promulgate and enforce rules and regulations relating to any matter or thing pertaining to the administration and enforcement of the provisions of this ordinance, including provision for the re-examination and correction of returns and payments alleged or found to be incorrect or as to which an overpayment or underpayment is claimed or found to have occurred." Ordinances of the City of Philadelphia, December 13, 1939, page 656.

With respect to these regulations, the decree provides, "1. Article II, subsection 3 (b) 3 and Article II, subsection 3 (d) 1 of the Regulations promulgated by the Receiver of Taxes . . . insofar as they classify income and profits from investments as taxable under the Ordinance solely by reason of the number of properties owned, and the number of purchases and sales, and the ratio of income and profits from such investments to other income, are invalid.

"2. Article II, subsection 3 (d) 1 of said Regulations is arbitrary, illegal and void."

Article II, subsections 3 (b) 3, and 3 (d) 1 were condemned "insofar as they classify income and profits from investments as taxable under the Ordinance solely by reason of the number of properties owned, and the number of purchases and sales, and the ratio of income and profits from such investments to other income" of the taxable. The words of the decree are taken from the 13th conclusion of law made by the chancellor.

The condemnation could be sustained if there were nothing more in the regulation than what is quoted in the decree.[2] But there is something more which must not be overlooked. The regulation, in its second paragraph, begins with these words: "As an aid in determining whether such operation [referred to in the preceding paragraph] constitutes an activity, the following information is pertinent and helpful:" Then follow a number of paragraphs specifying elements for consideration in addition to those named in the decree. While the court below was entirely justified in holding the entire regulation inapplicable to the plaintiffs, the

---

[2] "A pretended classification that is based solely on a difference in quantity of precisely the same kind of property is necessarily unjust, arbitrary and illegal." *Cope's Estate*, 191 Pa. 1, 22, 43 A. 79 (1899); *American Stores Co. v. Boardman*, 336 Pa. 36, 6 A. 2d 826 (1939).

defendants are entitled to have that portion of the decree modified to limit its effect to the requirements of the record. So considered the restraint is entirely proper and will be affirmed. It is not inconsistent, as the City contends, with our decision in *Penna. Co. etc. v. Phila. et al.*, 346 Pa. 406, 31 A. 2d 137 (1943). In that case we held that a corporate trustee, engaged in the business of operating real estate as mortgagee in possession or as owner protecting the assets of the trust estate pending liquidation, was engaged in "a business, enterprise, activity or undertaking conducted for profit" within the meaning of the ordinance. Mr. Justice ALLEN M. STEARNE said, of another regulation (not Article II 3 (b) 3, now before us), "The regulation was therefore validly promulgated by the Receiver within the scope of the ordinance. As it represents a bona fide and reasonable attempt to make an administrative classification of operations as taxable and nontaxable, depending upon whether the taxpayer is engaged in performing services and actively managing property in the conduct of business thereon, or whether he is merely receiving unearned income from the passive ownership of property, it is in harmony with Section 1 of Article IX of the Constitution requiring that taxes shall be uniform upon the same class of subjects. In Dole v. Philadelphia, supra [337 Pa. 375, 11 A. 2d 163 (1940)] and Butcher v. Philadelphia et al., 333 Pa. 497 [6 A. 2d 298 (1938)], it was held that incomes could be validly classified as earned and unearned for the purpose of such a tax, and the Receiver's regulation is merely definitive of that classification with specific reference to real estate operations by trustees." The case did not involve the portion of the regulation referring to tests based on the ratio of income or the number of properties held.

Article II, subsection 3 (d) 1 is in these words: "(d) Other Taxable Activities (1) Where a person

engages in the buying and selling of stocks, bonds and other types of securities, and such transactions are not isolated and few, but are extended so as to constitute an activity, the net profits therefrom are subject to this tax."

This regulation was condemned in the 14th conclusion of law as specifying "such a vague, indefinite, arbitrary and discriminatory test for the taxation of income and profits from securities as to amount to a taking of property without due process of law . . ." contrary to the provisions of both the state and federal constitutions.

The record shows how the City attempted to apply both these regulations to the plaintiffs. An agent of the City inquired of the city's solicitor "whether such profits arising from trading transactions as well as the income from interest and dividends . . ." and "profits of the sale of said business properties and the rentals received prior to the sale thereof are taxable . . ." The City's law officer replied that "the net profits realized from such transactions are taxable because they constitute an activity within the language of the aforementioned regulation . . ." He added that "the profits from the sale of the two business properties . . ." were also taxable. In a supplementary reply he stated "that the interest and dividends realized from said stock transactions . . ." are taxable under the ordinance. It is not necessary here to repeat what we said in *Breitinger's* case on the limits of the City's power to tax, a limitation that was apparently overlooked. Plaintiffs were taxed on net income from an "activity" as used in the regulation, but not as used in the ordinance where "activity" was included in the words "business" or "profession". The plaintiffs were not in the investment business. The profits taxed were not net earnings from business or profession. The City's law officer should have applied

the rule of strict construction (see *Breitinger v. Philadelphia*, 363 Pa. 512, 70 A. 2d 640), which had apparently been observed for the nine preceding years, until it was entirely ignored in the assistant city solicitor's advice to the field agent in 1948. The City appears to have claimed liability solely on the number of annual transactions, perhaps as many as 15, of which 6 were casual.[3] The ordinance contains no justification for taxation on so vague and capricious a standard and would be bad if it did. It does not appear that in advising that plaintiffs were liable to tax on "the interest and dividends realized from said stock transactions" that the City's law officer considered the scope of the power to tax granted by the Sterling Act.[4]

Paragraphs numbered 1 and 2 of the decree must be limited in their application to this record; so modified, the decree restraining the defendants from attempting to collect the tax described in the proceeding, and striking off the assessment, is affirmed. The costs shall be paid by the appellant, the City of Philadelphia.

---

[3] We quote the following illustrative comment from one of the briefs. "Moreover, a number of transactions in a single class of securities often proves, upon analysis, to constitute but a single transaction. For example, in this case $19,000 of Seattle Gas Co. 5's of 1954 were sold in 1942 on a single order to the broker. The order was executed in five lots between February 27 and April 25, 1942. It is counted as five separate transactions. Similarly the sale of fifty shares of U. S. and International Securities Corporation Preferred, sold in odd lots on August 12 and August 13, 1946, is counted as two transactions. In 1947 two dividends are apparently counted as 'transactions'."

[4] Act of August 5, 1932, section 1, Special Session, P. L. 45, 53 PS 4613.