## Quaid, Appellant, *v.* Philadelphia Tax Review Board.

Argued December 17, 1958. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

*George F. Shinehouse, Jr.,* with him *James W. Brown, Jr.,* and *Zink, Shinehouse & Holmes,* for appellant.

*Leonard B. Rosenthal,* Assistant City Solicitor, with him *Shirley S. Bitterman,* Assistant City Solicitor, and *David Berger,* City Solicitor, for appellee.

OPINION BY WOODSIDE, J., March 18, 1959:

This is an appeal from an order of the court below sustaining the action of the Philadelphia Tax Review Board in denying the petition of the taxpayer to strike off a net profit tax assessment.

James A. Quaid was an equal partner with Rodman H. Martin in Martin-Quaid Co., which was engaged in the business of fabricating metals and metal products in the City of Philadelphia. The partnership filed tax returns with the City of Philadelphia and paid tax on the net profit earned by the partnership in the operation of its business during all of the time of its existence.

On March 24, 1952, the partnership was terminated by Quaid selling his interest in it to Martin for $200,000. Calculated according to federal income tax standards, the cost to Quaid of his interest in the partnership was $77,294.16 and his expenses of sale were $4300, with the result that the sale yielded a gain to petitioner of $118,405.84.

Quaid, a resident of Montgomery County, did not file a net income tax return in Philadelphia for the year 1952, but Martin-Quaid Co. did file a return and

paid the tax on the gain earned by the operation of its business during that part of the year Quaid was associated with it.

After the sale by Quaid of his interest in the partnership, the city assessed a tax against him on the $118,405.85 gain which it contends was a net profit earned by him from the operation of a business in Philadelphia.

Upon petition of Quaid, the Tax Review Board conducted a hearing which took the form of a recorded conversation between members of the board, the city solicitor and counsel for Quaid. The board was given a copy of the agreement of the sale of the partnership interest, and the facts set forth above were admitted by both parties.

The agreement of sale provided that Quaid did "bargain, sell, transfer, set over and assign unto [Martin and his wife] all of the right, title and interest of Quaid in the partnership known as MARTIN-QUAID Co., including the interest of QUAID in all real estate, fixtures, equipment, machinery, work in progress, inventory, accounts receivable, contracts, policies of insurance, choses in action, and the good will used in and belonging to said partnership. MARTIN shall have the right to the use of the name 'MARTIN-QUAID Co.' until December 31, 1952, whereupon such right to the use of said name shall cease, and thereafter neither party shall have the right to use the name of 'MARTIN-QUAID Co.' or any other deceptively similar name."

Upon being interrogated by members of the board and the city solicitor, counsel for Quaid said, "A substantial amount of the profit represented the good will of the business. So there could be some minor appreciation in certain of the assets, for example, real estate held over a period of time, but the big factor in

the sale of this business was the good will which inured to the business."

Relying upon this statement, the board and the court below concluded that the sum of $118,405.85 was composed primarily of good will which was earned, and was subject to the Philadelphia net profit tax. Quaid, thereupon, appealed to this Court.

The question is whether the sum which Quaid received by the sale of his partnership interest, in excess of the cost of that interest to him, was taxable under the City Income Tax Ordinance as net profit earned from the operation of a business in Philadelphia.

As stated in the opinion of the Tax Review Board, the City Income Tax Ordinance of December 13, 1939, as amended, "does not impose a general income tax, but subjects to tax two classes of income, commonly described as 'wages' and 'net profits.' These two arms of the tax are frequently referred to as the 'wage tax' and the 'net profits tax' although they are basically different aspects of the same tax."

The ordinance as it existed in 1952 imposed an "annual tax" "on the net profits earned . . . of businesses, professions or other activities conducted in Philadelphia by non-residents."[1]

---

[1] In all tax statutes there is the provision, usually in a single sentence, which "imposes" the tax. It is interesting to note that the sentence imposing the tax, which must be the starting point in the consideration of all tax cases, cannot be found in full in the record or the briefs.

In the courts of most counties an ordinance upon which a court case is based is made a part of the record. Although the convenience of the court may not require this in Philadelphia, the appellate courts find it difficult to consider many of these problems without having before them the ordinance whch they are called upon to interpret. Having called this situation to the attention of the City Solicitor, we have received his cooperation in

"Net profits" is defined in the ordinance as "The net gain from the operation of a business, profession or enterprise after provisions for all costs and expenses incurred in the conduct thereof."

The word "earned" as used in this ordinance, according to the Supreme Court in *Breitinger v. Philadelphia*, 363 Pa. 512, 519, 70 A. 2d 640 (1950), "is obviously used in a limited sense and not in the generally comprehensive sense in which the word is sometimes used" and means, " 'to gain, get, obtain, or acquire as the reward of labor or performance of some service.' "

The tax is imposed upon "active conduct of a money making occupation and not to the kind of acts done by one not engaged in business but merely conserving his property," (*Breitinger v. Philadelphia*, supra, page 521) and thus profits from real estate, mortgages and securities are not "earned" within the meaning of the ordinance (*Breitinger v. Philadelphia*, supra, pp. 513-24; *Murray v. Philadelphia*, 363 Pa. 524, 70 A. 2d 647 (1950)) unless the taxpayer is engaged in the real estate, mortgage or security business. *Pennsylvania Co. v. Philadelphia*, 346 Pa. 406, 31 A. 2d 137 (1943). See also *Ross v. Philadelphia*, 149 Pa. Superior Ct. 33, 25 A. 2d 834 (1942) in which it was held that voluntary offerings made to a clergyman at marriages, funeral services, masses, etc. received by him without demand as gratuities were not "earned in-

---

obtaining the necessary ordinances in this and other cases. He has also advised us that his office shall hereafter file with its appellate court briefs the full text of all relevant provisions of city ordinances. We trust that all counsel appearing in cases involving municipal actions will keep in mind that the appellate courts do not have available municipal ordinances and resolutions which they are being called upon to interpret, unless such municipal actions are made a part of the record or briefs.

come" or "net profits earned", and were not taxable under the ordinance.

"The ordinance contemplates a tax only upon 'earned income'. This implies that some labor, management or supervision must be involved in the production of that income. Income derived merely from ownership of property would not satisfy the definition." *Pennsylvania Co. v. Philadelphia,* supra, 346 Pa. 406, 407, 31 A. 2d 137 (1943).

In order for the "gain" of the sale of a non-resident's interest in a partnership to be taxable the gain must be considered as *earned* by the taxpayer from the *operation* of a business in Philadelphia.

In construing a statute or an ordinance words and phrases are to be construed according to their common and approved usage, unless the statute or ordinance defines them otherwise. Statutory Construction Act of May 28, 1937, P. L. 1019, §33, 46 PS §533.

The money received here by the appellant was not from the *operation* of a business but from the *sale* of a business. A single isolated transaction such as the sale of a business by its owner is not the operation of a business. *Breitinger v. Philadelphia,* supra, 363 Pa. 512, 516, 70 A. 2d 640 (1950) ; *Murray v. Philadelphia,* supra, 363 Pa. 524, 532, 533, 70 A. 2d 647 (1950).

Gain from the sale of a partnership interest in a business is not, according to common and approved usage of the words or as defined in the ordinance, *earned from the operation of a business.* The sale by the appellant of his interest in the partnership was the disposition of a capital asset. The fact that part of the value of that capital asset was good will accumulated over a number of years partly as a result of the services of the appellant does not make it, or any part of it, "net profit" as defined in the ordinance.

The contract of sale between the partners makes no attempt to put a valuation on the various items of property transferred, and there is no evidence that the partners themselves arrived at the sale price by any separate valuation of the property transferred.

The Tax Revision Board accepted as a stipulation the answer of Quaid's counsel to a question by the City Solicitor that "A substantial amount of the profit represented the good will of the business." The board, concluding that the "gain" was "good will," held that the gain was earned by Quaid's services to the partnership.

" 'Good will' has been defined by Judge COOLEY as the favor which the management of a business has won from the public, and the probability that old customers will continue their patronage: . . . 'A retiring partner conveys in addition to his interest in the tangible effects, simply the advantage that an established business possesses over a new enterprise.' " *White v. Trowbridge,* 216 Pa. 11, 19, 20, 64 A. 862 (1906).

The good will, if earned at all, was "earned" over a number of years during which time the tax rate was different. It was not earned in the year the "annual tax" was assessed. But the good will which the partnership had acquired may or may not have been the result of the partners' services. It could have been the result of an improved market with which the partners' labors had no connection, or of any number of other events not brought about by any activity of the partners.

But, assuming that Quaid's profit was composed entirely of good will, which the record does not establish, and that the good will was solely the result of the partners' efforts, of which there was no evidence, it was the good will of the partnership and not of the

partners. Quaid possessed no good will independent of the partnership.

"Good will," says our Supreme Court, "could hardly exist independently of the property occupied by the firm." *Underdown v. Underdown,* 279 Pa. 482, 489, 124 A. 159 (1924); *Musselman and Clarkson's Appeal,* 62 Pa. 81 (1869).

A surviving partner has been held not to be liable for the good will of the partnership. *Underdown v. Underdown,* supra; *Musselman and Clarkson's Appeal,* supra; *Marmaduke v. Brown,* 254 Pa. 18, 98 A. 769 (1916). Furthermore, Mr. Justice MUSMANNO in the recent case of *Vollet v. Pechenik,* 380 Pa. 342, 346, 110 A. 2d 221 (1955) stated that the capital gain involved in the liquidation of partnership assets cannot be regarded as "profits" produced by partnership trade.

Ordinarily a partnership is not recognized as an entity like a corporation, but rather a relationship or status between two or more persons who unite their labor and property to carry on a business for profit. But, the ordinance which we are here called upon to interpret makes an exception to this general rule, and treats a partnership for the purposes of taxation as an entity. *Tax Review Board v. Belmont Lab. Co.,* 392 Pa. 473, 478, 479, 481, 141 A. 2d 234 (1958).

The city admitted that Quaid was not required to file an individual return independent of the partnership tax return while the partnership was in operation. Following this recognition of a partnership as an entity, a non-resident is denied the right to deduct his individual business losses from partnership profits realized in Philadelphia.

At the hearing before the Tax Review Board, the assistant city solicitor stated that he recognized this as "a close question," and the Tax Review Board referred to it as "a difficult question." Although taxing

officials, as well as courts, are bound by the statutory rule that provisions imposing taxes must be strictly construed, Statutory Construction Act of May 28, 1937, P. L. 1019 §58 (3), 46 PS §558, it is natural for them to sometimes resolve close questions against the taxpayer. In their offices, if not in the courtroom, taxing officials argue, not entirely without merit, that only by doing this can they get court guidance on the questions which are recognized as being close.

We agree with the taxing officials that the city's right under its ordinance to collect tax upon this partnership sale is doubtful,—very doubtful. But the rule, definitely established in the law of this Commonwealth, is that if there is any reasonable doubt tax statutes must be strictly construed in favor of the taxpayer and most strongly against the taxing authority. *Paper Products Co. v. Pittsburgh,* 391 Pa. 87, 94, 137 A. 2d 253 (1958).

This rule was first stated in *Boyd v. Hood,* 57 Pa. 98 (1868) and has been followed in numerous cases including among others the following: *Murray v. Philadelphia,* supra, 364 Pa. 157, 163, 164, 71 A. 2d 280 (1950) ; *Breitinger v. Philadelphia,* supra, 363 Pa. 512-515, 70 A. 2d 640 (1950) ; *Tax Review Bd. v. Belmont Lab. Co.,* supra, 392 Pa. 473-477, 141 A. 2d 234 (1958) ; *Hillman Coal & Coke Co. v. Jenner Twp. et al.,* 300 Pa. 108, 112, 150 A. 293 (1930) ; *Rieck-McJunkin Dairy Company Mercantile Assessment Case,* 156 Pa. Superior Ct. 9, 12, 39 A. 2d 259 (1944) ; *Scranton v. O'Malley Mfg. Co.,* 341 Pa. 200, 19 A. 2d 269 (1941) ; *Gould v. Gould,* 245 U. S. 151, 153, 38 S. Ct. 53 (1917) ; *U. S. v. Merriam,* 263 U. S. 179, 188, 44 S. Ct. 69 (1923) ; *Com. v. P. R. T. Co.,* 287 Pa. 190, 196, 134 A. 455 (1926) ; *Callery's Appeal,* 272 Pa. 255, 272, 116 A. 222 (1922) ; *Arbuckle's Estate,* 324 Pa. 501, 505, 188 A. 758 (1936) ; *Krause's Estate,* 325 Pa. 479, 483, 191 A.

162 (1937); *Panther Valley Television Co. v. Summit Hill Borough*, 376 Pa. 375, 102 A. 2d 699 (1954); *Pittsburgh Milk Co. v. Pittsburgh*, 360 Pa. 360, 62 A. 2d 49 (1948); *Allentown School District Mercantile Tax Case*, 370 Pa. 161, 87 A. 2d 480 (1952).

It was applied to the ordinance before us in *Murray v. Philadelphia*, supra; *Breitinger v. Philadelphia*, supra; *Tax Review Bd. v. Belmont Lab. Co.*, supra.

The city would have us ignore this rule and apply a rule which would bring us to an opposite result. It argues that our scope of review is limited, and that only a flagrant abuse of discretion or a clear violation of positive law warrants the reversal of an administrative decision by a court of law. They cite unemployment compensation cases, zoning cases and appeals from the Public Utility Commission which, governed by their own statutes and not involving the application of taxing provision, are not relevant to the issue before us.

The city also relies upon *L. J. W. Realty Corp. v. Philadelphia*, 390 Pa. 197, 203, 134 A. 2d 878 (1957) where the following appears: "We have said the administrative interpretation of a taxing statute is controlling unless clearly erroneous. Federal Deposit Insurance Corp. v. Board of Finance and Revenue, 368 Pa. 463, 471, 84 A. 2d 495 (1951)". In the latter case on page 472 appears the following: "An administrative body cannot, by mere usage, invest itself with authority or powers not fairly or properly within the legislative grant; it is the law which is to govern rather than departmental opinions in regard to it: . . ."

If the rule set forth in *L. J. W. Realty Corp. v. Philadelphia*, supra, were applied to a problem such as the one now before us, it would completely nullify the rule established by both statute and court decisions that tax statutes must be strictly construed.

There certainly was no intent on the part of the Supreme Court to do this, or they would not have so strongly restated the rule of strict construction the following year in both *Tax Review Bd. v. Belmont Lab. Co.*, supra, 392 Pa. 473, 477, 141 A. 2d 234 (1958) and *Paper Products Co. v. Pittsburgh,* supra, 391 Pa. 87, 94. 137 A. 2d 253 (1958).

In a further effort to support its position that only a flagrant abuse of discretion or a clear violation of positive law warrants a reversal of the board's finding in this case the city cites *Traylor v. Allentown,* 378 Pa. 489, 492, 106 A. 2d 577 (1954), and *Park Drive Manor Tax Assessment Case,* 380 Pa. 134, 136, 110 A. 2d 392 (1955). These cases involve the assessment of real estate. The presumption is that the assessment made of real estate by the assessors is correct. In other words that the assessors' judgment of the value of the real property admittedly taxable is presumed legal. If the question were whether or not the thing assessed was real property, or whether or not the law imposed a tax upon the real estate in question, then there would be no such presumption, and in applying the tax statute the rule of strict construction would apply.

There is no doubt that the rule applicable to the issue before us is that if there is any reasonable doubt tax statutes and ordinances must be strictly construed in favor of the taxpayer and most strongly against the taxing authority. There being a very real doubt of the city's right under its ordinance to impose a tax upon the gain of the appellant realized by the sale of his partnership interest, the order of the court below must be reversed.

For the reasons set forth above we are convinced the appeal must be sustained.

Order of the court below is reversed and the assessment is stricken.