Decision and Journal Entry
{¶ 1} Appellant, Dr. Norman W. Czubaj, appeals from the decision of the Summit County Court of Common Pleas, which affirmed the City of Tallmadge Income Tax Board of Review's decision to deny Dr. Czubaj's request for a refund of taxes withheld by the City of Tallmadge. We reverse and remand.
 {¶ 2} Dr. Czubaj was employed as Superintendent of the Summit County Board of Mental Retardation and Developmental Disabilities ("MRDD"). From January 1, 2000 through September 6, 2000, Dr. Czubaj resided in Stow, Ohio in Summit County. On September 6, 2000, Dr. Czubaj resigned from the Superintendent position, and from September 7, 2000 onward, he resided in Stow, New York. It is an uncontroverted fact that Dr. Czubaj was never a resident of Tallmadge, Ohio at any time relevant to the subject matter of this appeal.
 {¶ 3} MRDD and Dr. Czubaj entered into a Severance Agreement (the "Agreement") pursuant to his resignation. Included in the Agreement are promises on Dr. Czubaj's part to refrain from doing certain activities. Specifically, paragraph five of the Agreement provides that, for a period of three years from the date of the execution of the Agreement, Dr. Czubaj is to refrain from participation in activities and functions sponsored by the Board of the MRDD and other listed organizations. The non-compete clause in paragraph six of the Agreement states that, for the same three-year period, Dr Czubaj is to also refrain from directly or indirectly engaging in any position in the MRDD field in Summit County in any capacity, and from performing services in any position outside of Summit County but within Ohio through which he would have dealings with the Board of the MRDD or any of its operations.
 {¶ 4} The Agreement provides that Dr. Czubaj was to receive a total payment of $350,000.00, "[i]n consideration of [Dr.] Czubaj's commitments pursuant to the various provisions of this Agreement, * * * less appropriate withholding (Federal, State, and Local withholdings[.])" (Emphasis added.) That same provision of the Agreement also states that the $350,000.00 payment relates to the following items: (1) $207,351.00 for accrued vacation and sick days, and salary through December 31, 2001; (2) $122,649.00 for pension, medical, disability, and life insurance coverage; and (3) $20,000.000 for outplacement. In 2000, Dr. Czubaj received $26,400.00 as partial payment on the Agreement, which included his salary as well as vacation and sick time accruals. Dr. Czubaj paid income tax on the $26,400.00 amount to the City of Tallmadge, and Dr. Czubaj does not contest the payment of local tax for this amount on appeal.
 {¶ 5} In 2001, Dr. Czubaj received a payment of $323,529.62 pursuant to the Agreement, and $6,470.59 was withheld from this amount for Tallmadge income taxes. Dr. Czubaj filed a Tallmadge income tax return for 2001 with Tallmadge, claiming a refund of $6,470.59 on the basis that he had neither worked nor resided in Tallmadge during the year 2001. In March 2001, Dr. Czubaj wrote a letter to Tallmadge, requesting a refund. In a letter dated April 17, 2002, the Tallmadge Income Tax Department denied this request, reasoning that the $323,529.62 amount was listed on a federal W-2 form, and that this payment was related to his employment with MRDD. Dr. Czubaj appealed the Income Tax Department's decision to the Tallmadge Income Tax Department Board of Review (the "Board"), which, in a hearing on June 5, 2002, unanimously voted to deny his request for a refund. In a letter dated July 3, 2002, the Tallmadge Income Tax Department formally notified Dr. Czubaj of the Board's decision to deny his request.
 {¶ 6} On July 22, 2003, Dr. Czubaj filed an administrative appeal with the Summit County Court of Common Pleas, contending that (1) the Board's decision was not supported by substantial, reliable, and probative evidence, and is not in accordance with law; (2) the Board's decision was contrary to R.C. 718.011; (3) the Board's decision violates his rights under the due process clause; and (4) the Board's decision was contrary to Tallmadge Codified Ordinances 181.02 and 181.03. On December 12, 2002, the common pleas court affirmed the Board's decision to deny Dr. Czubaj's refund request, finding that the Board's decision "was supported by a preponderance of reliable, probative and substantial evidence." It is from the common pleas court's decision denying his request for a refund of the $6,470.59 amount withheld by Tallmadge in 2001 that Dr. Czubaj now appeals.
 {¶ 7} Dr. Czubaj timely appealed, asserting one assignment of error.
 Assignment of Error
"The Court Of Common Pleas Abused Its Discretion When It Denied Appellant's Request For A Refund. The Decision Of The Court Was Not Supported By A Preponderance Of Reliable, Probative And Substantial Evidence And Was Contrary To Case And Statutory Law."
 {¶ 8} In his sole assignment of error, Dr. Czubaj avers that the common pleas court abused its discretion when it affirmed the Board's decision to deny his request for a Tallmadge local tax refund, and that the court's decision is not supported by a preponderance of reliable, probative, and substantial evidence. We agree.
 {¶ 9} We first note the appropriate standard of review. Appeals taken from a tax board's decision are governed by Chapter 2506 of the Revised Code. R.C. 2506.01 provides that a final order, adjudication, or decision of a board may be reviewed by the common pleas court of the county where the board's principal office or political subdivision is located. Regarding such an administrative appeal, the common pleas court may find that the board's decision is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04; see, also, Smith v. Granville Twp. Bd. of Trustees (1998),81 Ohio St.3d 608, 612. The common pleas court may affirm, reverse, vacate, modify, or remand the decision to the board appealed from. R.C.2506.04. However, an appeal to the common pleas court is limited in scope:
"[T]he court is required to confirm the decision of the administrative agency unless, as a matter of law, it finds that the decision or actions of the administrative agency in reaching that decision is not supported by a preponderance of reliable, probative, and substantial evidence upon the whole record." (Emphasis sic.) Copley Twp. Bd. of Trustees v.Lorenzetti, 146 Ohio App.3d 450, 453-54, 2001-Ohio-1662, at ¶ 18.
 {¶ 10} R.C. 2506.04 also provides that the common pleas court's judgment may be further appealed only on questions of law, as provided in the Rules of Appellate Procedure and Chapter 2505 of the Code. See, also, Smith, 81 Ohio St.3d at 613. An appellate court's standard of review of an appeal from a common pleas court's disposition with respect to an administrative appeal is limited in scope. Dudukovich v. LorainMetro. Hous. Auth. (1979), 58 Ohio St.2d 202, 207. An appellate court is required to affirm the decision of the common pleas court, "unless it finds, as a matter of law, that the decision is not supported by a preponderance of reliable, probative, and substantial evidence." (Emphasis added.) Smith, 81 Ohio St.3d at 613, quoting Kisil v. Sandusky (1984),12 Ohio St.3d 30, 34.
 {¶ 11} When reviewing the decision of the common pleas court with respect to an administrative appeal, the appellate court's review includes a determination of whether the trial court abused its discretion. Kisil, 12 Ohio St.3d at 34, fn. 4. An abuse of discretion is more than an error of judgment. To constitute an abuse of discretion, a common pleas court's action must be unreasonable, arbitrary, or unconscionable. State ex. rel. The V Cos. v. Marshall (1998),81 Ohio St.3d 467, 469. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Freeman v. Crown City Mining, Inc. (1993), 90 Ohio App.3d 546,552. However, on questions of law, the common pleas court "does not exercise discretion[,] and the court of appeal's review is plenary."McGee v. Ohio State Bd. of Psychology (1993), 82 Ohio App.3d 301, 305.
 {¶ 12} Chapter 181 of the Administrative Code of the Tallmadge Codified Ordinances addresses Tallmadge's income tax. That chapter references Article XVIII, the Home Rule Amendment of the Ohio Constitution, and Chapter 718 of the Revised Code. Section seven of Article XVIII to the Ohio Constitution provides that a municipality may "frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government." Section three of Article XVIII empowers municipalities to "exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Section 3, Article XVIII, Ohio Constitution. However, Sections three and seven of this article "do not confer any extra-territorial authority. The direct authority given by that article is expressly limited to the exercise of powers within the municipality." (Emphasis sic.) Toliver v.Middletown (June 30, 2000), 12th Dist. No. CA99-08-147, quotingSpringfield v. All Am. Food Specialists, Inc. (1993), 85 Ohio App.3d 464,468, quoting Prudential Co-Operative Realty Co. v. Youngstown (1928),118 Ohio St. 204, 207. Chapter 718 of the Revised Code provides certain limitations on a municipality's power to levy an income tax. "The import of Article XVIII of the Ohio Constitution and R.C. Chapter 718 in the interpretation of a municipal tax ordinance is that certain income may be taxed and certain income may not be taxed by a municipal corporation."Toliver, supra, citing Thompson v. Cincinnati (1965), 2 Ohio St.2d 292,294-97. A municipality may tax wages "resulting from" work and labor that is performed within its boundaries by a nonresident of the municipality.Thompson, 2 Ohio St.2d at paragraph one of the syllabus.
 {¶ 13} In deciding whether Tallmadge's ordinances permit taxation of the severance payment in question in this case, we must abide by the rules of statutory construction. First, if the specific language of an ordinance is unambiguous, the clear meaning of the words must be used.Bosher v. Euclid Income Tax Bd. of Rev., 99 Ohio St.3d 330,2003-Ohio-3886, at ¶ 14, citing Roxane Laboratories, Inc. v. Tracy
(1996), 75 Ohio St.3d 125, 127. Also, when a statute is unambiguous, it is to be applied, not interpreted. "To interpret language that is already plain is to legislate, which is not the function of the court." Toliver,
citing Sears v. Weimer (1944), 143 Ohio St. 312, paragraph five of the syllabus. Additionally, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42. In construing an ordinance, other statutes relating to the same general subject matter must be read together with the ordinance being construed, in pari materia. Bosher at ¶ 14, citing United Tel. Co. of Ohio v.Limbach (1994), 71 Ohio St.3d 369, 372. Finally, the Supreme Court of Ohio has stated that tax ordinances must be strictly construed, and any doubt as to their meaning must be resolved in favor of the taxpayer.Roxane, 75 Ohio St.3d at 127, citing Gulf Oil Corp. v. Kosydar (1975),44 Ohio St.2d 208, paragraph one of the syllabus. If a legislative body incorporates definitions of words or phrases, these definitions are controlling and will direct the determination of the legislative intent.Toliver, citing Benua v. Columbus (1959), 170 Ohio St. 64, paragraph one of the syllabus.
 {¶ 14} In support of his sole assignment of error, Dr. Czubaj argues that the denial of the refund violates Tallmadge Ordinances 181.02
and 181.03, R.C. 718.011, as well as his due process rights. Initially, we note that both Dr. Czubaj and the Board postulate in their briefs for this appeal that R.C. 718.011 does not govern the outcome in the instant case. R.C. 718.011 provides the following:
"On or after January 1, 2001, a municipal corporation shall not tax thecompensation paid to a nonresident individual for personal servicesperformed by the individual in the municipal corporation on twelve or fewer days in a calendar year[.]" (Emphasis added.)
 {¶ 15} In order for a municipality to evade the mandate of R.C.718.011, it must show that the nonresident sought to be taxed performed a personal service within the municipality for more than 12 days in the respective calendar year. R.C. 718.011. The Board claims that because a benefit inured to MRDD during the year 2001 from Dr. Czubaj's promise to refrain from certain activities, that such forbearance should be considered "personal services performed" throughout 2001 for the purposes of R.C. 718.011. Additionally, the Board claims that, because acontinuous benefit was provided by Dr. Czubaj's "services," Dr. Czubaj "performed services" for more than 12 days during the year 2001; and that therefore, Tallmadge is not prevented from taxing Dr. Czubaj's 2001 severance payment, pursuant to R.C. 718.011. Dr. Czubaj contends that these promises are not considered "personal services performed" as contemplated by R.C. 718.011.
 {¶ 16} Chapter 5747 of the Revised Code governing income taxes defines the term "compensation" as "any form of renumeration paid to an employee for personal services." R.C. 5747.01(D). However, the Revised Code does not define the phrase "personal services." The Supreme Court of Ohio has articulated a definition for "personal services" as it is used under chapter 5739 regarding sales tax. Emery Industries, Inc. v.Limbach (1989), 43 Ohio St.3d 3, paragraph one of the syllabus. Although that chapter deals with personal service transactions in the context of sales tax rather than income tax, the phrase is used in a comparable context and the significant part of the definition is appropriate for analysis in the instant case. The Supreme Court has stated that under R.C. 5739.01(B) concerning sales transactions, "personal service" is "any intellectual or manual act involving a recognized skill performed by a person who is specifically engaged * * * to perform the act." (Emphasis added.) Id. This definition speaks of the phrase in a proactive sense, defining it in terms of an act done by a person. The Webster's Third New International Dictionary, (1993) 20, defines "act" as "an external manifestation of the will: something done by a person[.]" The word "act," as commonly used, clearly connotes some affirmative and physical manifestation by a person. Thus, the meaning of the word "act," and therefore the meaning of the phrase "personal services," cannot include one's forbearance from an act.
 {¶ 17} Additionally, we note that R.C. 718.011 governs personal services "performed" by a nonresident. The use of the word "performed" in this statute section further substantiates the notion that personal service requires some affirmative act rather than a mere forbearance. It cannot be said that consideration for the forbearance of personal service is compensation for personal services rendered in the context of the Revised Code. See Haberman v. Tracy, Tax Commrs. of Ohio (Mar. 19, 1993), Ohio Bd. Tax. App. No. 91-A-1639. Based upon the foregoing, Dr. Czubaj's forbearance from the various activities articulated in the Agreement cannot constitute a "personal service" to the MRDD in the context of the Revised Code. Because this Court has concluded that Dr. Czubaj's forbearance is not a "personal service," it is unnecessary for us to address that portion of R.C. 718.011 which requires the services in question to be performed for more than 12 days for the municipality to be able to tax those services. Since Dr. Czubaj did not perform any "personal services" within Tallmadge during 2001, an analysis of the number of days involved is wholly irrelevant and inappropriate in the instant case.
 {¶ 18} Although we have concluded that Dr. Czubaj's 2001 severance payment is not considered "personal services" performed, and find that R.C. 718.011 does not have an impact on the outcome of this case, these determinations do not dispose of the issue of whether Dr. Czubaj's 2001 severance payment is a form of payment that is in fact subject to the Tallmadge Ordinance local tax.
 {¶ 19} Mindful of the rules of construction discussed above which direct our analysis, we now turn to a discussion of the Tallmadge ordinances in question. Tallmadge Ordinance 181.03 provides, in pertinent part, the following:
"(a) Subject to the provisions of Section 181.16 an annual tax * * * shall be imposed * * * upon the following:
"(1) On all taxable income earned * * * by nonresidents for work doneor services performed or rendered in the City of Tallmadge." (Emphasis added.) Tallmadge Codified Ordinances 181.03(a)(1).
 {¶ 20} In order for a nonresident to be taxed by Tallmadge pursuant to this ordinance section, the income earned by the nonresident must be (1) "taxable," (2) "earned," and (3) for "work done or services performed or rendered" in Tallmadge. Of the pertinent words in this ordinance section, the Tallmadge Ordinances only provide a definition for the phrase "taxable income." The ordinances provide that definitions of terms not expressly defined by the ordinances are to carry the same meaning as they would when used in a similar context in the Internal Revenue Code of 1986, Title 26, U.S. Code. The ordinances define "taxable income" as "salaries, wages, commissions, or any other compensation paid by an employer before any deductions[,] * * * except all forms of compensation described as being exempted in Section 181.03(e)." (Emphasis added.) Tallmadge Codified Ordinances 181.02(u). Ordinance section181.02(u) provides a lengthy list of categories of payments that are to be included in the phrase "other compensation:" "all forms of earned income, including but not limited to tips, tax shelter plans, gifts of any type for services rendered, vacation and holiday pay, wage continuation benefits, director's fees, jury duty fees, stock options granted in connection with the performance of service and not designated as capital gains, property in lieu of cash, sick pay, bonuses, incentive payments in whatever form, company closing benefits, supplemental unemployment benefits, earnings designated as deferred compensation or compensation paid by an employer in whatever form for services rendered, employer paid premiums for group-term insurance in excess of fifty thousand dollars ($50,000), strike benefits, depreciation recapture, ordinary income show on federal form 4797, and a resident partner's or stockholder's distributive share of a nonresident partnership or S-corporation net profits (whether received as wages paid or a draw from a drawing or capital account and whether received or accrued)." Tallmadge Codified Ordinances 181.02(u).
 {¶ 21} This ordinance section states, at the outset, that included in the term "compensation" are "all forms of earned income." (Emphasis added.) Id. The section then articulates what forms of earned income are to be considered compensation and therefore taxable income for the purposes of levying the Tallmadge local tax. Initially, we observe that the ordinance section, while enumerating a sizeable number of categories of payment to be considered "other compensation" (and therefore "taxable income"), does not explicitly list severance pay, insurance coverage, or outplacement as categories of payment subject to the Tallmadge tax. The term "earned" is not defined by the Tallmadge Ordinances, and therefore we follow the rules of statutory construction to apply both the clear meaning as well as the meaning of "earned" as employed by the Internal Revenue Code. See Bosher at ¶ 14. Furthermore, we must keep in mind that tax ordinances must be strictly construed, and that doubts as to meaning are to be resolved in favor of the taxpayer. Id.
 {¶ 22} The Internal Revenue Code defines the phrase "earned income" in various ways, depending on the taxation context in which it is used. Internal Revenue Code section 911 pertaining to the taxation of income earned by nonresident citizens of the United States, defines "earned income" as "wages, salaries, or professional fees, and other amounts received as compensation for personal services actuallyrendered[.]" (Emphasis added.) Section 911(d)(2)(A), Title 26, U.S. Code. Webster's Dictionary defines the word "earned" as "to receive, as equitable return for work done or services rendered[.]" Webster's Third New International Dictionary (1993) 714. Additionally, Webster's defines the phrase "earned income" as "income (as wages, salary, professional fees, or commissions) that results from the personal labor or services of an individual[.]" Id. Webster's defines "render" as "to give back, deliver, yield, cause to become," and "to hand over to another[.]" Id. at 1922. Furthermore, this Court has previously employed the following definition for "earned," in a similar context: "to gain, get, obtain, or acquire as the reward of labor or performance of some service." Campbellv. Don Plusquellic (May 8, 1991), 9th Dist. No. 14936, quoting Quaid v.Tax Rev. Bd. (1959), 188 Pa. Super. 623, 628. The foregoing definitions of "earned" lead this Court to the conclusion that, as with the phrase "personal services," "earned income" requires some form of service that results from an affirmative act.
 {¶ 23} We now turn to an application of the law to the facts of this case. As mentioned above, Dr. Czubaj contests that portion of the severance payment paid to him in 2001. Dr. Czubaj's 2001 severance payment consisted of salary through December 2001, pension, insurance coverage, and outplacement, for none of which Dr. Czubaj performed any affirmative acts or services within Tallmadge, Ohio. Moreover, we have already concluded supra that Dr. Czubaj's forbearance of service cannot be deemed a service performed. Considering the fact that Dr. Czubaj did not work for the MRDD after September 6, 2000, and since Dr. Czubaj's severance payment did not consist of "compensation for personal services actually rendered," this Court concludes that the severance payment is not "earned income" within the sphere of "compensation" as defined by the Tallmadge Ordinances. Consequently, we conclude that Dr. Czubaj's severance payment cannot be regarded as "taxable income" pursuant to Tallmadge Ordinance 181.03(a)(1).
 {¶ 24} Furthermore, we note that the Tallmadge Ordinances state that certain forms of payments are exempt from taxation under 181.03(a). Tallmadge Codified Ordinances 181.03(e). Specifically, section 181.03(e)(3) provides that pensions and proceeds of insurance, except for loss of business income insurance, are exempted from the income tax imposed by ordinance section 181.03(a).
 {¶ 25} When the terms of the statute are unambiguous, it is our responsibility to follow the rules of statutory construction which dictate that the provisions of the statute are to be applied and not interpreted. See Toliver, supra. It is this Court's responsibility to apply the unambiguous provisions and terms of the Tallmadge ordinance, and to make certain that we are not interpreting plain language, which would enter the realm of legislating. See Id. This Court would be venturing outside the bounds of its authority if we were to read into the Tallmadge ordinance a legislative intent to consider severance pay a category of "other compensation." Thus, a reading of the plain language of Ordinance section 181.02(u) necessitates the conclusion that Dr. Czubaj's severance pay is not included in the forms of income taxable by Tallmadge pursuant to 181.03(a)(1).
 {¶ 26} Based upon the aforementioned, we find that the common pleas court's decision, as a matter of law, is not supported by a preponderance of reliable, probative, and substantial evidence. See R.C.2506.04 and Smith, 81 Ohio St.3d at 613. We also conclude that the trial court's decision was unreasonable and arbitrary. See State ex. rel. The VCos., 81 Ohio St.3d at 469. Consequently, we also find that the trial court abused its discretion when it affirmed the decision of the Board's vote to deny Dr. Czubaj's request for the $6,470.59 refund. Accordingly, Dr. Czubaj's assignment of error is well-taken.
 {¶ 27} Because our finding — that the common pleas court's decision is not supported by a preponderance of reliable, probative, and substantial evidence and that the common pleas court abused its discretion — is dispositive of the instant case, it is not necessary for this Court to address Dr. Czubaj's constitutional due process argument. A court should avoid deciding a case on constitutional grounds if it can on statutory grounds. See Ohio Roundtable v. Taft,119 Ohio Misc.2d 49, 2002-Ohio-3669, at ¶ 50 (stating the rule that a court should avoid deciding a case on constitutional grounds if it can decide the case on statutory grounds).
 {¶ 28} Dr. Czubaj's assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed and remanded to the trial court for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
BAIRD, P.J., WHITMORE, J. CONCUR