## Chester Municipal Authority v. City of Chester

*J. H. Ward Hinkson* and *Edward F. Cantlin,* for plaintiff.

*Joseph W. de Furia,* for defendants.

SWENEY, P. J., May 13, 1960.—Under the statute known familiarly as The Tax Anything Law of June 25, 1947, P. L. 1145, the City of Chester, on December 29, 1959, enacted ordinance no. 97, imposing a general revenue tax of 10 percent upon the gross receipts of all authorities in the city for a period beginning January 1, 1960, and ending December 31, 1960.

The issue before the chancellor is whether or not the City of Chester may levy this tax against its municipal authority. The two main questions raised are (1) are the gross receipts of the authority property and thereby exempted from this tax and (2) is such a tax against public policy. Plaintiff raises the third question that, if the tax is valid, it does not become effective until 30 days after the adoption of the ordinance. Plaintiff concedes that the defect in the effective date does not render the ordinance void; but, it is plain to us that, the ordinance having been enacted on December 29, 1959, the ordinance would not become effective until January 28, 1960. See Act of June 25, 1947, supra.

To determine the first question raised, it is necessary that section 15 of the Municipality Authorities Act of May 2, 1945, P. L. 382, 53 PS §318, be interpreted. The section reads as follows:

"The effectuation of the authorized purposes of Authorities created under this act shall and will be in all respects for the benefit of the people of the Commonwealth of Pennsylvania, for the increase of their

commerce and prosperity, and for the improvement of their health and living conditions, and since such Authorities will be performing essential government functions in effectuating such purposes, such Authorities shall not be required to pay any taxes or assessments upon any property acquired or used by them for such purposes, and the bonds issued by any Authority, their transfer and the income therefrom, (including any profits made on the sale thereof) shall at all times be free from taxation within the Commonwealth of Pennsylvania."

Plaintiff argues that a tax on gross receipts is a tax on property. The city argues that such a tax is not a property tax but an excise or mercantile tax; that a mercantile license tax is not a tax on property or income but an excise tax upon the privilege of transacting business measured by the gross volume of business transacted annually: National Biscuit Co. v. Philadelphia, 374 Pa. 604 (1953).

We will take judicial notice of the fact that the Chester Municipal Authority is the only authority presently incorporated or authorized by the City of Chester and that it is engaged in the business of supplying and selling water to residents in Chester and vicinity. A reading of the ordinance of the City of Chester which created this municipal authority no. 45 of 1939, discloses that this authority was "incorporated for the purpose of undertaking such project or projects as are permitted by the Municipality Authorities Act of 1935, as amended and supplemented, or may hereafter be amended and supplemented." The ordinances states further: "This ordinance is deemed necessary for the preservation of public safety, peace, comfort and general welfare of the citizens of the City of Chester . . ."

Since it is clear that plaintiff, as incorporated, is in all respects subject to the provisions of the Municipal-

ity Authorities Act, it follows that it may not be taxed or assessed "upon any property acquired or used" by it for its corporate purposes or upon the bonds issued by it, their transfer and the income therefrom or any profits made on the sale thereof. In Black's Law Dictionary, Third Edition, property is defined, inter alia, "to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value or which goes to make up wealth or estate."

"Gross income" represents the property of the authority, necessary for the operation of the authority for its municipal and corporate purposes and for the payment of its financial obligations. Without the acquisition of gross receipts, the authority would be unable to perform its municipal functions. Defendant admits that all of the gross receipts will be applied to the corporate functions of the authority. The evidence fails to show that any part of the gross income of the authority is for profit only. Logic dictates that the word "property" in the statute be given its broadest meaning and that "gross receipts" should be classified as property. The gross receipts provide the authority with capital to operate and expand its municipal functions. To the extent that land and buildings are acquired by it from its gross receipts, such acquisitions are tax exempt. To allow the City of Chester to tax the gross receipts of its authority would be to sanction an attempt on the part of the city to tax indirectly what it is prohibited from taxing directly.

The law is well settled that property owned by a municipal corporation may be taxed only if it is held by the municipality in its private capacity as a source of profit and is not devoted to public or governmental uses.

"Not only may the General Assembly exempt from taxation public property used for public purposes, but it has also been held that property owned by municipal bodies and used for public purposes is never subject to taxation unless the legislative intent to tax them is clear.

". . . 'If public property is exempt only when devoted to a public use, the question arises as to the effect of receiving an income from public property. This depends, at least to some extent, on the nature and source of the income. The income may be (1) merely incidental to a public use of property, or it may be (2) the direct result of a lease of all the property. If the income is merely incidental, the rule is well settled. Where the primary and principal use to which property is put is public, the mere fact that an income is incidentally derived from it does not affect its character as property devoted to a public use, so as to prevent its being exempt from taxation' ": Pittsburgh School District v. Allegheny County, 347 Pa. 101, 103, 105 (1943).

The intent of the legislature in section 15 of the Municipality Authorities Act that property of an authority shall not be taxed, if the authority is performing essential governmental functions, is clear. It is equally clear that gross receipts are included as property. A useful analogy may be drawn from the case of Murray et ux. v. Philadelphia, 364 Pa. 157, 171 (1950). "Taxation of the income from real estate is taxation of the real estate which produces the income: Kelley v. Kalodner, 320 Pa. 180, 181 A. 598 (1935); Murray v. Philadelphia, 363 Pa. 524, 70 A. 2d 647 (1950)." Income is itself property (Fischer v. Pittsburgh, 383 Pa. 138, 142 (1945)); but, it applies only to earned income and not unearned income. In the instant case, the gross income is entirely earned.

As to the question of public policy, the authority is given power to issue negotiable notes, bonds and other evidences of indebtedness and is given the corresponding duty to provide for the security of its bondholders. There is nothing in the record before us to show how the bondholders in the Chester Municipal Authority are protected, and it is conceivable that a gross receipts tax, if sustained as a valid tax, could impair the financial security of the bondholders. By the act, the purchasers of authority bonds are pledged that the Commonwealth will not "limit or alter the rights . . . vested in the Authority until all bonds at any time issued, together with the interest thereon, are fully met and discharged." Not only is the authority tax-exempt, but the bonds issued by the authority enjoy tax-exempt status, including their transfer and income therefrom, and any profit from the sale of them. Under the act, the authority is prohibited from doing anything which would impair the security of the holders of the obligations of the authority or violate any agreements with them or for their benefit. The Attorney General of the Commonwealth is given the right to examine the books, account and records of any authority.

The conclusion is inescapable that the City of Chester may not levy a gross receipts tax on the Chester Municipal Authority so long as it is being operated for public purposes. At the time the authority was created, it was deemed necessary for the general welfare of the citizens of the city. The authority is presently performing services essential to the public safety, peace and comfort of the citizens. To deprive the authority of any portion of its gross receipts, without a showing that they have been obtained by the authority acting in a proprietary capacity, could well interfere with the expansion and operation of the

authority to the detriment of the citizenry of the City of Chester.

To declare this tax a valid one, would be to ignore the legislative intent as is evidenced by the act as a whole. By the Municipality Authorities Act, supra, the legislature created a new entity, a body politic and corporate, with authority in the body to enact ordinances or adopt resolutions for its particular municipality. It created a public corporation with powers to exercise essential governmental functions, including eminent domain. Among its rights and powers is the following:

"(d) To acquire, purchase, hold, lease as lessee and use any franchise, property, real, personal or mixed, tangible or intangible or any interest therein necessary or desirable for carrying out the purposes of the Authority . . ."

A broad interpretation of that clause alone indicates that the authority could hold its gross receipts for corporate purposes and ignore the city's demand for a share of it in taxes. On the ground of sound public policy, we cannot hold that this tax is sound . . .

### Decree Nisi

And now, May 13, 1960, it is ordered and decreed that

(*a*) ordinance no. 97 of 1959 of the City of Chester is invalid and unlawful.

(*b*) The City of Chester and Eunice Comisiak, treasurer of said city, are enjoined from enforcing or attempting to enforce the said ordinance or any provision thereof against plaintiff, Chester Municipal Authority.

(*c*) Each party shall pay its own costs . . .