DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff-Appellant Timothy Metcalfe, as a class representative, has appealed the judgment of the Summit County Court of Common of Pleas which granted summary judgment in favor of Defendant-Appellee the City of Akron ("the City"). This Court affirms.
 I {¶ 2} In 2003, the Ohio Police and Fire Pension Fund ("OPF") announced a significant increase in its premiums. Shortly thereafter, Appellant sought primary insurance coverage through the City. The City maintained that its coverage was secondary to OPF and refused to provide Appellant with primary coverage. As a result, Appellant, a retired Akron firefighter, and William Biasella, a retired Akron police officer, filed suit against the City on February 4, 2004. Appellant filed suit on behalf of all of the living safety force retirees and their dependents. In February 2005, the trial court certified the matter as a class action.
 {¶ 3} In his initial complaint, Appellant alleged numerous causes of action. However, as discovery proceeded, Appellant withdrew several of those causes of action. After extensive discovery including numerous depositions, the City moved for summary judgment on Appellant's two remaining claims: a breach of contract action maintained under the collective bargaining agreement ("CBA") and a declaratory action based on City of Akron ordinances. Appellant responded in opposition but was unable to persuade the trial court that genuine issues of material fact remained to be decided. Accordingly, on January 12, 2006, the trial court granted the City's motion for summary judgment on both of Appellant's remaining claims. Appellant has timely appealed, raising one assignment of error for review.
 II
"THE TRIAL COURT IMPROPERLY WEIGHED THE EVIDENCE IN THE MOVANT'S FAVOR AND CONSTRUED ALL THE FACTS, LAW AND INFERENCES IN THE MOVANT'S FAVOR IN ORDER TO GRANT THE CITY OF AKRON SUMMARY JUDGMENT, THEREBY VIOLATING THE DIRECTIVES OF CIV.R. 56 AND MERITING REVERSAL."
 {¶ 4} In his sole assignment of error, Appellant has argued that the trial court erred when it found that no genuine issue of material fact existed and that the City was entitled to judgment on both of Appellant's claims. Specifically, Appellant has asserted that the trial court improperly weighed the evidence before it in order to reach its conclusions. We find that Appellant's assertions lack merit.
 {¶ 5} An appellate court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. This Court applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12. Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated;
(2) the moving party is entitled to judgment as a matter of law; and
(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 6} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of a genuine issue of material fact as to some essential element of the non-moving party's claim. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 292. To support the motion, such evidence must be present in the record and of the type listed in Civ.R. 56(C). Id.
 {¶ 7} Once the moving party's burden has been satisfied, the non-moving party must meet its burden as set forth in Civ.R. 56(E). Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material to demonstrate a genuine dispute over the material facts. Id. See, also, Henklev. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 8} In its motion for summary judgment, the City relied upon its own ordinances, the CBAs for the FOP and the Akron Firefighters, and numerous depositions and affidavits of current city employees, union members, past and present union presidents, and retirees. Appellant responded in opposition, relying upon much of the same materials. Ultimately, the trial court agreed with the City's position and granted summary judgment in favor of it on both of Appellant's claims.
 {¶ 9} Pursuant to the foregoing standard of review, we examine the evidence presented with respect to each of Appellant's claims.
Declaratory Judgment
 {¶ 10} In his complaint, Appellant sought a determination that City of Akron ordinances entitled him to full payment of his insurance premiums by the City. We find no merit in such a contention.
 {¶ 11} "Just as when interpreting statutory provisions, the starting point for discerning the meaning of a municipal resolution or ordinance is to look at its plain terms." Shamptonv. Springboro, 98 Ohio St.3d 457, 2003-Ohio-1913, at ¶ 30. In interpreting an ordinance or statute, words and phrases must be read in context and construed according to the rules of grammar and common usage. R.C. 1.42; Indep. Ins. Agents of Ohio, Inc. v.Fabe (1992), 63 Ohio St.3d 310, 314. Courts do not have authority to ignore the plain and unambiguous language of a statute, but must give effect to the words used. Czubaj v.Tallmadge, 9th Dist. No. 21389, 2003-Ohio-5466, at ¶ 13.
 {¶ 12} Throughout the proceedings below, Appellant has relied upon the following provision contained in a 1962 Akron ordinance:
"Section 1-A. That the Director of Finance be and is hereby authorized to pay the hospitalization insurance premiums of all City employees retiring on and after January 1, 1963, under the Public Employees Retirement System or Police and Firemen's Relief and Pension Fund, and the spouses of such employees." Akron City Ordinance 1405-1962.
While the 1962 ordinance has been amended throughout the years, Appellant has asserted that the above provision has not been substantively altered and is restated in each amendment. Appellant has argued that the above provision requires the City to fully pay his insurance premiums for the rest of his life. Appellant's interpretation of the above ordinance, however, is directly at odds with its plain language and seeks to greatly expand the meaning of the above provision.
 {¶ 13} "Clearly, the word `authorized' is a delegation of power from the council to its [director of finance] in accordance with * * * the charter[.]" Shampton at ¶ 30. Specifically, section 36 of the City's charter provides as follows:
"No money shall be drawn from the Treasury of the City, nor shall any obligation for the expenditure of money be incurred except pursuant to appropriations made by the Council; and whenever an appropriation is so made, the Clerk shall forthwith give notice to the Director of Finance. Moneys appropriated as hereinbefore provided shall not be used for other purposes than those designated in the appropriation ordinance, without authority from the Council."
The statute by its plain language, therefore, grants the City's Director of Finance authority to make payments, it does not obligate him to do so. That is, the City's charter requires its council to appropriate funds prior to incurring any obligation for the expenditure of money. Nothing in the statute approaches the interpretation proffered by Appellant. By its language, the statute does not mandate the payment of health care premiums. Rather, it permits the payment of those premiums as an expenditure if the City contracts for such an obligation, for example, through a CBA or separate contract.
 {¶ 14} Additionally, Appellant has argued that the statute itself created a contractual right that was subject to enforcement by its intended beneficiaries. We disagree.
 {¶ 15} When examining an ordinance to determine whether it creates a private contractual right, courts must examine the terms used by the ordinance to determine whether they were intended to create such a contract. Indiana ex rel. Anderson v.Brand (1938), 303 U.S. 95, 104. Nothing in the 1962 ordinance suggests that the City intended to create a private contractual right. Rather, as noted above, the language employed by the City, authorizing payment of premiums, evidences an intent to fulfill contractual obligations which may arise separate and apart from the ordinance. That is, if the City contracted to pay health care premiums for its retirees, the above ordinance permits the Director of Finance to expend funds to meet those obligations. Accordingly, the trial court did not err in granting summary judgment in favor of Appellee on Appellant's complaint for declaratory relief.
Breach of Contract
 {¶ 16} Appellant has also alleged that the trial court erred in finding that no genuine issue of material fact existed regarding whether the City had violated the CBA. We find that such an argument lacks merit.
 {¶ 17} It is well established that "[a] collective bargaining agreement is a contract, and `the overriding concern of any court when construing a contract is to ascertain and effectuate the intention of the parties.'" State ex rel. Kabert v. ShakerHeights (1997), 78 Ohio St.3d 37, 44, quoting Trinova Corp. v.Pilkington Bros., P.L.C. (1994), 70 Ohio St.3d 271, 276. The parties' intent "is presumed to reside in the language they chose to employ in the agreement." Kelly v. Med. Life Ins. Co.
(1987), 31 Ohio St.3d 130, 132. Furthermore, "any assessment as to whether a contract is ambiguous is a question of law[.]"Watkins v. Williams, 9th Dist. No. 22162, 2004-Ohio-7171, at ¶23. If a contract is unambiguous, its interpretation is a matter of law unaccompanied by the need for factual determinations.Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241,246. Where an ambiguity exists, however, interpretation of a contract involves both factual and legal questions. Four StarService, Inc. v. Akron (Oct. 27, 1999), 9th Dist. No. 19124, at *5. Where that ambiguity is coupled with a material issue of fact supported by proper evidentiary materials, summary judgment is improper. Inland Refuse Transfer Co. v. Browning-FerrisIndustries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 323-24.
 {¶ 18} When interpreting a contract, common, undefined words appearing in a written instrument "will be given their ordinary meaning unless manifest absurdity results, or some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander, 53 Ohio St.2d at paragraph two of the syllabus. Furthermore, courts may resort to extrinsic evidence of the parties' intent "only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning."Kelly v. Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, 132.
 {¶ 19} In his complaint, Appellant asserted as follows:
"The Defendant's refusal to honor the terms, including the payment of insurance premiums of the various CBA's, which represent binding contracts, constitutes a breach of contract."
Appellant has argued that the CBA requires that the City pay, in their entirety, the insurance premiums for retirees. In support of his argument, Appellant has alleged that the CBA does not differentiate between active and retired employees. Specifically, Appellant has urged that since the City fully pays for the hospitalization benefits of its active employees, it must do the same for its retirees. In support of his claim, Appellant has relied upon the following CBA provision which amends a city ordinance which details the benefits provided to Akron firefighters and police officers:
"Hospitalization Insurance, as heretofore authorized, for active permanent full-time City employees and their dependents [and] * * * retired employees and their dependents[.]"
The parties are in agreement that the City has paid insurance premiums for secondary coverage on behalf of its retired firefighters and police officers. Appellant, however, has maintained throughout this litigation that since the City fully pays the insurance premiums of its current employees that the above provision requires that the City fully pay the insurance premiums of its retired employees. On the other hand, the City has maintained that it was always the parties' intent that the City would pay the insurance premiums on only secondary insurance for its retirees.
 {¶ 20} In support of its position, the City relies upon a letter of understanding which has been a part of the firefighters' CBA since 1997 and which has been a part of the police officers' CBA since 1991. The original 1991 letter reads in pertinent part as follows:
"This letter is to confirm the City of Akron's commitment made during the course of the 1991 negotiations that should the Police and Firemen's Disability and Pension Fund of Ohio's health insurance plan or successor plan cease to provide benefits to eligible City of Akron retirees, spouses and dependent children, widows and widowers, the City of Akron would become the primary insurer of benefits authorized by the City of Akron ordinances."
Appellant's argument that the above letter does not support the City's position is two-fold.
 {¶ 21} First, Appellant has asserted that the trial court erred in relying upon the letter because it is not a part of the CBA. Appellant has argued the CBA is unambiguous and thus the trial court was not permitted to examine extrinsic evidence to ascertain its meaning. We find that such a contention lacks merit.
 {¶ 22} Appellant's argument in support of his breach of contract claims suffers the same deficiency as his complaint for declaratory relief. Namely, like the City's ordinance, nothing in the CBA details with specificity the City's responsibility with respect to the payments of insurance premiums. Rather, the plain language of the CBA requires that the City provide hospitalization benefits to retirees. It does not reference, in any manner, whether those benefits must take the form of primary or secondary insurance. In his deposition, Appellant admitted that the CBA did not contain any reference to secondary or primary insurance:
"There's nothing in the contract that says they'll be — that the City of Akron will be primary. Also there's nothing in the contract said they will be secondary insurance also." (Sic.)
Despite this admission, Appellant has maintained that the CBA unambiguously requires the City to pay retirees' premiums in full. As the sole evidence before the trial court indicated that within the four corners of the CBA the parties had failed to discuss the issue raised by Appellant, Appellant's contention that the agreement is unambiguous lacks merit. As such, this Court need not decide whether the letter of understanding is an actual contract term because the trial court was permitted to examine extrinsic evidence to interpret the CBA. Kelly,31 Ohio St.3d at 132.
 {¶ 23} Appellant has also asserted that the letter of understanding relied upon by the City supports his position, rather than supporting the City's position. Specifically, Appellant has asserted that the parties' intended the language "cease to provide benefits" to mean that the City would become the primary insurer of the retirees if the OPF ever began to charge premiums. Essentially, Appellant seeks to rewrite the letter of understanding to read that the City will become the retirees' primary insurer if OPF "ceases to provide benefits at no cost." The rules of construction, however, prohibit such an interpretation. Specifically,
"[i]n the construction of a contract courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain." Farmers Natl. Bank v.Delaware Ins. Co. (1911), 83 Ohio St. 309, syllabus.
Appellant's interpretation of the letter of understanding would violate the above canon of construction.
 {¶ 24} It is undisputed that OPF began charging life insurance premiums in 1992. It is further undisputed that the above letter of understanding has been placed in every police officers' CBA agreement since 1991.[1] Furthermore, it is undisputed that such a letter has been placed in every firefighters' CBA since 1997. Under the interpretation proposed by Appellant, the condition contained in each of the letters issued after 1992, if OPF ceases to provide benefits, would be meaningless. That is, under Appellant's proposed definition, the City has been the retirees' primary insurer pursuant to the letter since 1992 because OPF ceased providing benefits at no cost during that year. Accepting such an interpretation would be tantamount to finding that the letters of understanding written to the FOP in 1994, 1997, 2000, 2003, and the letters written to the firefighters union in 1997, 2000, and 2003 were all meaningless. The canons of construction, however, compel us to give meaning to each letter if possible. The later-written letters restate verbatim the 1991 letter, but substitute the word "reaffirm" for "confirm". As such, the newer letters begin:
"This letter is to reaffirm the City of Akron's commitment[.]" That commitment, to provide primary benefits to the retirees, is only triggered when a condition, OPF ceasing to provide benefits, has been met. We are not inclined to indulge in Appellant's interpretation that the City repeatedly included a condition in its letter that had previously been satisfied.
 {¶ 25} The remaining undisputed evidence before the trial court supports its finding that the parties' intended that the City pay insurance premiums on a secondary basis for its retirees. In his deposition, Officer Richard McPherson testified at length that the letter of understanding reached between the parties was intended to take effect only if OPF ceased, in its entirety, providing benefits to the retirees. In his words, Officer McPherson noted that the letter was only designed to protect against OPF going "belly up." He noted that the issue of the effect of OPF charging premiums was not negotiated. He opined that no negotiations were entered into regarding the effect of OPF charging premiums because at that time in 1991, OPF was not charging premiums
 {¶ 26} Additionally, a trial court is permitted to consider whether a past practice has become binding if the following conditions are met: 1) the practice is unequivocal, 2) the practice is clearly enunciated, and 3) the practice has been followed for a reasonable period time. Assn. of Cleveland FireFighters, Local 93 v. Cleveland, 99 Ohio St.3d 476,2003-Ohio-4278, at ¶ 16. Herein, the undisputed evidence demonstrates a past practice that the City would provide secondary benefits to its retirees.
 {¶ 27} In an attempt to avoid the use of past practices, Appellant has argued that the City's practice of providing secondary benefits is not unequivocal. Specifically, Appellant has relied upon the deposition of Mark McLeod, an employee benefits manager for the City. In his deposition, McLeod admitted that the City was the primary insurer for some of its retirees. Contrary to Appellant's assertions, however, McLeod's testimony does not indicate that the City's past practice is equivocal. McLeod's testimony indicates that the City is the primary insurer for retirees who are ineligible for OPF. Such a practice is entirely consistent with the City's stance that OPF is the primary insurer of its retirees unless OPF does not provide benefits to those individuals. With respect to the employees McLeod testified about, he specifically stated that they were ineligible under OPF guidelines. Accordingly, there exists no evidence in the record to support Appellant's claim that the City's past practice was equivocal.
 {¶ 28} In direct contrast to Appellant's assertions, the record reflects that the City and both unions have consistently viewed the City as a secondary insurer for retirees. In his deposition, McPherson noted as follows with respect to retirees:
"In all our negotiations it was always declared that the City was not their primary coverer that they were secondary coverer to the Police and Fire Pension Board."
Current FOP president Paul Hlynsky's deposition contains the following colloquy:
"Q. At any time that you've been involved in negotiations, has the union ever disputed that the City of Akron's coverage for retirees is secondary?
"A. Well, there were informal talks during negotiations, but our committee understood that the City — there was no doubt in our understanding that the City is a secondary provider and an outpatient provider to anyone who has primary insurance as far as retirees." (Emphasis added.) Despite deposing current and former City employees, union members, and union presidents, Appellant presented no evidence to contradict the statements of numerous witnesses that the City had always provided secondary coverage to retirees. Rather, statements by past union negotiators serve to bolster the City's position. McPherson, who has been involved in union negotiations since 1986, continued discussing secondary coverage in his deposition, stating as follows:
"I had known that had been the practice for a long time, for as long as I had been around there.
"That was my understanding that I learned from previous bargaining unit committees[.] * * *
"There's usually holdovers that have a history of these things and it had always been expressed to me by previous FOP negotiating committee members and board members that when it came to the retirees' healthcare, that once back in the `60s and I believe it was '66 or '67 when they established these State pension systems and they started providing the healthcare, that that's how it went from that point forward, that those retirees used that healthcare, their bills were paid by them and what was left they turned into the City[.]"
Accordingly, McPherson's testimony demonstrates that the City's practice, and the union's acceptance of that practice, had been in existence for a lengthy period of time before it was challenged in the instant litigation. In addition, McLeod took his position as benefits manager in 1995 and testified as follows regarding the City's practice of providing secondary coverage:
"Q. Okay. When you say `past practice,' when you took over in 1995, in essence, this is the practice that was going on at that point in time and, in essence, you have continued that?
"A. Yes, that's my understanding that that was the past practice."
In the record before this Court, there is no evidence that the City has ever strayed from its practice of providing only secondary coverage to its retirees.
 {¶ 29} Finally, we find that the City has clearly enunciated its policy. As the depositions above make clear, the unions were each aware of the City's position that it provided secondary coverage and accepted that position. The City further clarified its position by using the above-discussed letter of understanding. By its plain language, the letter makes clear that the City is a secondary insurer unless a triggering condition is met which causes the City to become primary.
 {¶ 30} As the City presented undisputed evidence of an unequivocal past practice that was clearly enunciated for a reasonable period of time, we find no error in the trial court's reliance upon such a practice. Assuming arguendo that such a practice did not create a binding obligation, it overwhelmingly demonstrates the parties' intent that the City would provide only secondary coverage to its retirees who are eligible for OPF. As the City has fulfilled its obligations to provide secondary coverage, the trial court properly concluded that Appellant had not established a genuine issue of material fact regarding a breach of the CBA.
 {¶ 31} We are mindful of the financial hardship imposed on these retirees as a result of the rapidly escalating cost of healthcare. The claims raised by Appellant in his complaint, however, are unsupported by the evidence presented to the trial court and precedent compels our finding that the trial court did not err in its interpretation of the documents it was presented. Nothing in the ordinances adopted by the City supports Appellant's action for declaratory relief. Furthermore, nothing in the language of the CBA or in the parties' past practices supports a finding that the City has breached the CBA. Accordingly, Appellant's sole assignment of error lacks merit.
 III {¶ 32} Appellant's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J. Carr, J. Concur.
[1] The record reflects that such agreements are entered into every three years.