**PIONEER GAZEBO, INC., Appellee and Cross–Appellant,**

v.

**BUCKEYE BARNS, INC., Appellant and Cross–Appellee.**

[Cite as *Pioneer Gazebo, Inc. v. Buckeye Barns, Inc.*, 169 Ohio App.3d 667, 2006-Ohio-6672.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 06CA0023.

Decided Dec. 18, 2006.

</div>

---

3. Id.

4. Id.

5. Id.

668

Robert W. Eckinger, for appellant and cross-appellee.

Matthew P. Mullen and Nathan D. Vaughn, for appellee and cross-appellant.

WHITMORE, Presiding Judge.

{¶ 1} Appellant and cross-appellee, Buckeye Barns, Inc. ("Buckeye"), has appealed from the judgment of the Wayne County Court of Common Pleas, which found for appellee and cross-appellant, Pioneer Gazebo, Inc. ("Pioneer"), on its counterclaim for breach of contract. Additionally, Pioneer has cross-appealed from the judgment of the Wayne County Court of Common Pleas, which denied its complaint for a permanent injunction. This court affirms.

I

{¶ 2} While many of the facts of the underlying matter are highly disputed, several pertinent facts are undisputed. Buckeye and Pioneer began doing business together in 1995. Early in that year, employees of Buckeye spoke with Dan Steiner regarding the possibility of finding an individual in the Amish community to build gazebos that Buckeye would sell. Following a meeting, Steiner and an associate of his, Harley Hochstetler, entered into an agreement with Buckeye regarding the manufacturing of the gazebos. The agreement provided that Buckeye would receive a three percent commission or override on every sale of the gazebos. Thereafter, Steiner located a man, Paul Swartzentruber, who agreed to build the gazebos. On June 11, 1995, the first gazebo was completed. During that year, Steiner alleged that gazebos were sold both to Buckeye and to numerous other individuals.

{¶ 3} In late 1997, Buckeye hired a new sales representative and at that time the parties agreed to increase Buckeye's commission on the sale of gazebos to five percent of every sale. Steiner alleged that the increase in the commission was contingent upon Buckeye selling at least 200 gazebos annually. Despite not reaching this threshold on numerous occasions, Buckeye continued to receive commissions from Pioneer. Gradually, however, the parties' business relationship began to deteriorate. In 2000, Buckeye began to suspect that Pioneer was not fully accounting for the sales of the gazebos. The parties' souring relationship resulted in the instant suit.

{¶ 4} On February 2, 2005, Pioneer filed suit, seeking a temporary injunction and permanent injunction that would prohibit Buckeye from using the name "Pioneer Gazebos" to sell products that were not manufactured by Steiner's company. In turn, Buckeye counterclaimed against Pioneer, alleging a breach of the commission agreement. The trial court held an initial hearing and denied Pioneer's request for a temporary injunction. On November 29, 2005, all of the parties' claims proceeded to a bench trial. At the conclusion of the evidence, the trial court found that neither party had met its burden and denied recovery to both parties. Specifically, the trial court determined that both parties lacked credibility, thereby prohibiting a finding that they had met their burden of proof. Buckeye has timely appealed the trial court's ruling on its counterclaim, raising one assignment of error for review. Pioneer has timely cross-appealed from the trial court's ruling on the counts in its complaint, raising three assignments of error for review.

II

Buckeye's Assignment of Error

The court's decision finding that the appellant did not prove by a preponderance of the evidence the terms of the written commission agreement was against the manifest weight of the evidence, contrary to law, and an abuse of discretion.

{¶ 5} In its sole assignment of error, Buckeye has asserted that the trial court erred in finding that it had not provided sufficient evidence to support its counterclaim. Specifically, Buckeye has alleged that it provided specific evidence of the terms of the agreement and that the trial court erred in failing to enforce those terms. This court disagrees.

{¶ 6} We review whether a judgment is against the manifest weight of the evidence in a civil context utilizing the same standard of review as that used in the criminal context. *Frederick v. Born* (Aug. 21, 1996), 9th Dist. No. 95CA006286, 1996 WL 471219, at *6. This court must, therefore, review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009. Further, this court has stated that it "will not reverse the judgment of the trial court as being against the manifest weight of the evidence if the judgment is based upon some competent, credible evidence that speaks to all of the material elements of the case." *Morris v. Andros*, 158 Ohio App.3d 396, 2004-Ohio-4446, 815 N.E.2d 1147, at ¶ 18. "This

standard is highly deferential and even 'some' evidence is sufficient to sustain the judgment and prevent reversal." *Bell v. Joecken* (Apr. 10, 2002), 9th Dist. No. 20705, 2002 WL 533399, at *2. Therefore, this court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily" in favor of the plaintiff. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717; see, also, *Otten*, 33 Ohio App.3d at 340, 515 N.E.2d 1009.

{¶ 7} Furthermore, "[i]f a contract is clear and unambiguous, its interpretation is also * * ·* a matter of law, and no issue of fact remains to be determined." *Denman v. State Farm Ins. Co.*, 9th Dist. No. 05CA008744, 2006-Ohio-1308, 2006 WL 709104, at ¶ 13. Contract terms are ambiguous "only if they can be reasonably understood in more than one sense." *Watkins v. Williams*, 9th Dist. No. 22162, 2004-Ohio-7171, 2004 WL 3017228, at ¶ 24. "If a contract is deemed unambiguous, a court must defer to the express terms of the contract and interpret it according to its plain, ordinary, and common meaning." (Internal quotations omitted.) *Haley v. Hunter*, 9th Dist. No. 23027, 2006-Ohio-2975, 2006 WL 1627135, at ¶ 15. Courts may resort to extrinsic evidence of the parties' intent "only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." *Metcalfe v. Akron*, 9th Dist. No. 23068, 2006-Ohio-4470, 2006 WL 2483875, at ¶ 18, quoting *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 132, 31 OBR 289, 509 N.E.2d 411.

{¶ 8} We note that the parties did not formally execute a written commission agreement. However, it is undisputed that the parties entered into an agreement through which Buckeye would be paid a commission for gazebos sold by Pioneer. Early in the parties' business relationship, Buckeye developed a "Dealer Sales Recap Sheet," which Pioneer completed monthly and sent back to Buckeye with a commission check. That sheet contains the following provisions:

Gazebos: Pioneer pays Buckeye 3% on all Gazebos built by Pioneer (not options) except those mutually agreed that there is no commission to be paid.

Furniture & Other: Pioneer pays Buckeye 3% on all Furniture and other items sold by Pioneer except that mutually agreed that there is no commission to be paid.

Later, by joint agreement, the parties increased the three-percent commission to five percent. Pioneer does not dispute that the above terms were part of the agreement. Further, Pioneer has not contended that the above provisions are ambiguous. Upon our review, we agree that the above contractual provisions are unambiguous because they cannot be "reasonably understood in more than one sense." *Watkins* at ¶ 24.

{¶ 9} It is undisputed that Pioneer, at a minimum, partially performed under the above terms. Pioneer, however, has argued that the trial court properly determined that Buckeye had failed to prove each of the provisions of the commission agreement. Specifically, Pioneer has alleged that the agreement contained a provision that a commission would be paid only if Buckeye sold 200 gazebos, a provision that Buckeye would receive a commission only if invoices were processed in under 45 days, and a provision that Buckeye would receive a commission only if Pioneer's sales exceeded $1,000,000. Pioneer has pointed to Steiner's testimony in support of these contentions, along with the testimony of a former Buckeye sales representative, Randy Collier, and a business partner in Pioneer, Paul Swartzentruber.

{¶ 10} A review of the record reveals the following undisputed facts. Pioneer paid in accordance with that agreement for numerous periods. Furthermore, Pioneer paid commissions for periods when Buckeye sold fewer than 200 gazebos. However, at trial, Steiner testified that Pioneer gratuitously paid thousands of dollars in commission that it was not contractually obligated to pay in the hopes that Buckeye would eventually sell 200 units. Steiner asserted that Buckeye promised to improve its sales on a consistent basis. In addition, Collier testified that he was present during the meeting in which the 200–unit threshold was discussed. On cross-examination, however, Collier admitted that he had been terminated by Buckeye and had defaulted on a $10,000 loan given by Buckeye, and that Buckeye currently had a lien on his home.

{¶ 11} While Steiner and Collier presented testimony that may properly be viewed as less than credible, their statements are not wholly unsupported. Steiner produced minutes from a December 11, 1998 meeting of Pioneer's partners that referenced the 200–unit threshold for receipt of the five percent commission. However, when questioned about those minutes, Steiner admitted that a three percent commission would be paid for all units under 200.

{¶ 12} To confuse matters further, Paul Swartzentruber testified that the five percent commission would not be paid unless Buckeye reached $1,000,000. Furthermore, Steiner testified that Pioneer would have no incentive to pay a commission if Buckeye was not actively marketing its product. Buckeye has ignored this logic, asserting that it is entitled to a commission even if it sells no Pioneer products and Pioneer independently markets its products. It is unclear to this court what the consideration for that contract would be.

{¶ 13} In addition, Pioneer contended below that Buckeye had not always paid invoices within 45 days. In response, Buckeye contended that the rare occasions on which invoices were untimely paid resulted from errors committed by Pioneer in processing the invoices.

{¶ 14} Finally, Buckeye disputed any condition as it related to total sales. Buckeye employees indicated that during initial talks, they had discussed the possibility of selling 100 units. These employees indicated that this initial number was a company goal, but in no way were commissions conditioned upon total sales or any minimum number of gazebos sold. Furthermore, other than Swartzentruber, no party from either business remembered discussing a minimum sales figure prior to paying commissions.

{¶ 15} Thus, the trial court was presented with conflicting evidence. Moreover, the provisions contained in the Recap Sheet do not contain an integration clause, nor are they signed by either party. Therefore, we cannot say that the written agreement was the entire agreement between the parties. Furthermore, while Pioneer sporadically paid commissions pursuant to the above written provisions for multiple years, the duration of the parties' agreement was never established.

{¶ 16} In addition to failing to establish the duration of the agreement, we cannot say that Buckeye's evidence was credible. As noted above, Buckeye contended that it was entitled to a commission regardless of performing any activity that would benefit Pioneer. Furthermore, Dan Schlabach's testimony undermined the credibility of Buckeye. Schlabach, an independent businessman, testified that he had worked for a short period with Buckeye manufacturing playhouses. Schlabach noted that once his relationship with Buckeye ended, Buckeye continued to use the name of his products to market products they manufactured.[1] Schlabach's testimony, therefore, undermined the credibility of Buckeye's employees who testified about the business relationship with Pioneer.

{¶ 17} Therefore, this court agrees with the trial court's determination that the parties lacked credibility because they routinely contradicted themselves and one another. Accordingly, we defer to the trial court's finding that the interested witnesses lacked credibility. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The trial court had before it multiple accounts of what the parties' true agreement contained. None of those accounts appeared credible and as noted above, some of the interpretations offered do not support an actionable breach-of-contract claim. The evidence below was susceptible to multiple interpretations, favoring either party. Given the less-than-forthright testimony, we cannot say that the evidence weighed heavily in favor of Buckeye. The trial court's determination, therefore, that Buckeye failed to prove its case was not against the manifest weight of the evidence. Buckeye's sole assignment of error lacks merit.

---

1. We note that Schlabach's testimony appears to be improper character evidence, but no objection was raised in the trial court, so we consider it properly admitted.

Pioneer's Cross–Assignment of Error Number One

The trial court erred in finding that Pioneer Gazebo, Inc. did not have a right to exclusive use of the trade name/trademark "Pioneer Gazebos."

{¶ 18} In its first cross-assignment of error, Pioneer has alleged that the trial court erred in finding that it did not prove that Pioneer had first used the term "Pioneer Gazebos." Specifically, Pioneer has alleged that it supplied an abundance of evidence that demonstrated that it was the first to use the trade name "Pioneer Gazebos." We disagree.

{¶ 19} While not providing a standard of review, Pioneer has effectively argued that the trial court's determination that it had not met its burden of proof was against the manifest weight of the evidence. Accordingly, we utilize such a standard of review as laid out above.

{¶ 20} At issue in the instant matter is whether Pioneer demonstrated that it was in fact a prior user of the trade name "Pioneer Gazebos." The Ohio Supreme Court has held as follows:

> The rights in trademarks, trade names and service marks are acquired by actual user and not by registration. Such rights belong to the one who first actually adopts and uses the name or mark in connection with his business. * * * It is the actual use of the trade name, trademark or service mark in connection with the business and not the duration of such use which gives rise to legal rights. Thus, one who adopts and uses a name in connection with his business or products acquires the right to the use thereof over one who subsequently registers such name or mark. * * * The controlling question in cases of this nature is whether one has used a name, word, symbol or other means of identification in connection with his business in such manner that the public associates such name, etc., with a particular business or commodity so that the use by another is likely to create confusion in the mind of the public. Consequently, one having a prior use of such name, etc., is entitled to the use of such name, etc., to the exclusion of all others who wish to adopt it.

(Citations omitted.) *Younker v. Nationwide Mut. Ins. Co.* (1963), 175 Ohio St. 1, 6–8, 23 O.O.2d 285, 191 N.E.2d 145. Pioneer has asserted that the undisputed evidence demonstrates that it was the first to use the term "Pioneer Gazebos" to market its products. In denying Pioneer's claim for relief, the trial court held that "it is unclear as to what the agreement was between the parties. Both sides have used the name 'Pioneer Gazebos.' " Upon review of the evidence, the trial court's conclusion was not against the manifest weight of the evidence.

{¶ 21} In support of its case, Pioneer relied upon the testimony of Dan Schlabach, Randy Collier, Charles Hunt, Edward Webber, Dan Steiner, and Paul

Swartzentruber. In rebuttal, Buckeye relied upon the testimony of David Champer, James Geiser, Jay Champer, and Mark Berens.

{¶ 22} Schlabach testified that he had previously done business with Buckeye during which he manufactured playhouses that Buckeye sold. Schlabach testified that his business name was Little Cottage Company and that after his relationship with Buckeye ended, Buckeye continued to sell playhouses that were marketed as Little Cottages.

{¶ 23} Collier's testimony, as noted above, focused solely upon Buckeye's breach-of-contract claim. Accordingly, it has no bearing on Pioneer's trade name causes of action. Likewise, Swartzentruber's rebuttal testimony focused solely upon the breach-of-contract claim. His testimony, therefore, also has no bearing on Pioneer's claim of prior use of the trade name. In addition, the testimony of Charles Hunt and Edward Webber was limited to demonstrating the damage and consumer confusion caused by Buckeye's use of the trade name "Pioneer Gazebos." Accordingly, their testimony also has no bearing on Pioneer's claim that it was a prior user of the trade name.

{¶ 24} Dan Steiner, therefore, was the sole witness who testified for Pioneer on the issue of prior use. Steiner testified that he had developed the name "Pioneer Gazebos" with his business partners and their wives. Steiner testified that the name was used prior to the first gazebo being built in June 1995. Steiner noted that he had sold a gazebo using the trade name "Pioneer Gazebos" to Bud Mowery as early as 1995. We note that Mowery testified at the trial court hearing for the temporary restraining order, but did not testify at trial. In his earlier testimony, Mowery indicated that he referred to the gazebo as a "Pioneer Gazebo," but never indicated that it was marketed to him under that name. Rather, it is unclear whether Mowery used that term because he was purchasing a gazebo from Steiner's company then-named Pioneer Lawn Furniture or because the gazebo was marketed under that name.

{¶ 25} Steiner's testimony continued as follows. A bulk of literature, much of it produced by Buckeye, referred to Steiner's company as "Pioneer Gazebos." Order sheets, price sheets, and checks written by Buckeye to Pioneer included the term "Pioneer Gazebos."

{¶ 26} Dave Champer, the founder of Buckeye, testified for Buckeye as follows. Champer testified that he was the first to use the term "Pioneer Gazebos." He noted that Buckeye began marketing using the term as early as 1996. He supported his testimony by relying upon pricing sheets that Buckeye had created in 1996, which used the term "Pioneer Gazebos." He indicated that the name had not been used in 1995 because so few gazebos had been manufactured and even fewer had been sold.

{¶ 27} James Geiser testified next for Buckeye. Geiser, Steiner's nephew, testified that he performed deliveries for Buckeye. He testified that he had overheard Steiner say, "Boy, if Dave Champer knew what I was doing." He continued, noting that he believed that Steiner was referring to selling gazebos without paying a commission to Buckeye. Geiser concluded, stating that he had not always found his uncle to be truthful.

{¶ 28} Buckeye's remaining witnesses, Jay Champer and Mark Berens, focused their testimony upon Buckeye's breach-of-contract claim. Therefore, their testimony has no bearing on Pioneer's trade-name cause of action.

{¶ 29} Upon review of the evidence, we cannot say that the evidence weighed heavily in favor of Pioneer. Pioneer is correct that Steiner was the sole witness to contend that Pioneer had marketed to a consumer in 1995 using the name "Pioneer Gazebos." As noted above, however, Steiner's testimony was less than credible. He introduced no evidence at trial to support his claims that he marketed "Pioneer Gazebos" in 1995. Furthermore, a bulk of the documentary evidence relied upon by Pioneer that uses the term was produced by Buckeye. We cannot conclude, as Pioneer has, that Buckeye writing a check to "Pioneer Gazebos" supports Pioneer's cause of action. That evidence just as easily can be interpreted to support Buckeye's stance that it used the term "Pioneer Gazebos" throughout the parties' business relationship.

{¶ 30} Accordingly, the trial court was left with conflicting testimonial evidence and inconclusive documentary evidence. This court, therefore, cannot say that this is the exceptional case in which the evidence weighed heavily in favor of Pioneer. The trial court's determination that Pioneer had not met its burden was not against the manifest weight of the evidence.

{¶ 31} We recognize that such a result leaves the public with two entities marketing "Pioneer Gazebos." While obviously not an ideal result, it is compelled by the record. Like the trial court, we cannot find that either party offered credible evidence regarding the first use in commerce of the term "Pioneer Gazebos." We urge the parties to reach a resolution that is in the best interest of the public, but on the record before us, we cannot compel them to do so. Since this matter has been tried on its merits and is res judicata, only the parties can bring a rational solution to their tangled business affairs.

{¶ 32} Pioneer's first cross-assignment of error lacks merit.

### Pioneer's Cross–Assignment of Error Number Two

The trial court erred in denying injunctive relief pursuant to Pioneer Gazebo Inc.'s first claim for relief under the Ohio Deceptive Trade Practices Act.

{¶ 33} In its second cross-assignment of error, Pioneer has argued that the trial court erred in failing to find that Buckeye had engaged in deceptive trade practices. We disagree.

{¶ 34} R.C. 4165.02 provides:

(A) A person engages in a deceptive trade practice when, in the course of the person's business * * * the person does any of the following:

(1) Passes off goods or services as those of another;

(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another.

In its argument, Pioneer asserts that the trial court erred when it failed to find that Buckeye violated the above provisions. Specifically, Pioneer asserts that it presented evidence that Buckeye was using photographs of gazebos manufactured by Steiner's company and using the name "Pioneer Gazebos" to market inferior gazebos and that Buckeye had engaged in a form of "cybersquatting."[2]

{¶ 35} As noted above, the trial court did not err in finding that Pioneer had not proven that it was entitled to exclusive use of the name "Pioneer Gazebos." Accordingly, the use of that name by Buckeye cannot form the basis of a deceptive trade practice.

{¶ 36} The remainder of Pioneer's claims suffers from the same deficiency as its claim of first prior use. Its claims are solely supported by the testimony of Steiner. In turn, they are rebutted by the testimony of numerous Buckeye witnesses. While Steiner contends that Buckeye is using pictures of his gazebos to market inferior gazebos, Buckeye contends that it has engaged in no such activity. While Steiner contends that the documentary evidence clearly established Pioneer's claim, we cannot reach such a conclusion. Assuming arguendo that Buckeye's website contained pictures of gazebos that were manufactured by Steiner's company, there is no evidence that Buckeye was using these pictures to deceive customers.

{¶ 37} Furthermore, while not pleaded by Pioneer, we note that any claim that the photographs themselves are copyrighted material must also fail. While Steiner asserted that he had taken the photographs, Buckeye employees countered that they had taken the photos. In addition, to the extent that Steiner may have taken the photographs, he conceded that he authorized Buckeye to use them

---

**2.** "Cybersquatting" is defined as "[t]he act of reserving a domain name on the Internet, esp. a name that would be associated with a company's trademark, and then seeking to profit" from that activity. Black's Law Dictionary (8th Ed.2004) 414.

to market his gazebos. As noted above, evidence was presented that the photographs were being used for that purpose. As such, Pioneer failed to meet its burden with respect to a cause of action related to the use of the photographs.

{¶ 38} Accordingly, there is some competent, credible evidence to support the trial court's finding that Buckeye had not engaged in deceptive trade practices. See *Bell*, 9th Dist. No. 20705, 2002 WL 533399, at *2. Therefore, Pioneer failed to meet its burden in demonstrating by a preponderance of the evidence that Buckeye had engaged in deceptive trade practices. Pioneer's second cross-assignment of error, therefore, lacks merit.

### Pioneer's Cross–Assignment of Error Number Three

The trial court erred in denying injunctive relief upon Pioneer Gazebo Inc.'s second claim for relief under the Ohio common law claim for unfair trade practices.

{¶ 39} In its final cross-assignment of error, Pioneer has argued that the trial court erred in finding that it was not entitled to injunctive relief under common law. We disagree.

{¶ 40} Pioneer's final claim is predicated upon a finding that it is entitled to the sole use of the term "Pioneer Gazebos." As we held above, the trial court did not err in finding that Pioneer had not proven that it was entitled to that exclusive use. Accordingly, its unfair trade practices common law claim was properly denied by the trial court. Pioneer's third cross-assignment of error lacks merit.

### III

{¶ 41} Buckeye's sole assignment of error is overruled. Pioneer's three cross-assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

CARR and MOORE, JJ., concur.