DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellants, Camelot Estates Homeowners' Association of Avon, Lore McSweeney, Tressia Valenti and William Wido ("Camelot"), appeal the judgment of the Lorain County Court of Common Pleas, which granted summary judgment in favor of appellees, Erika and Timothy Rounds ("the Rounds"), entering declaratory judgment and awarding damages in favor of the Rounds. This Court reverses.
 I. *Page 2 {¶ 2} McSweeney, Valenti and Wido were members of the Board of Trustees of Camelot Estates Homeowners' Association of Avon ("Association") at the time relevant to this matter. The Rounds owned property within the Association.
 {¶ 3} The Rounds filed a complaint against appellants for declaratory judgment and waiver of contribution, and alleging breach of contract and breach of fiduciary duty. The complaint was premised on appellants' denial of the Rounds' request to erect an above-ground swimming pool on their property. Appellants denied the Rounds' initial request for safety reasons. The Rounds submitted a second request for a swimming pool and privacy fence with a self-locking gate to alleviate any safety concerns. Appellants denied the Rounds' second request, citing the Association's Declaration of Covenants and Restrictions and further finding the pool to be an "attractive nuisance" which might subject neighbor children to the risk of injury. The Rounds responded to appellants, asserting that appellants had misconstrued the provisions of the Covenants and Restrictions, which do not specifically address swimming pools. The Rounds further asserted that appellants misstated the Avon building code's classification of above-ground pools and that they exceeded their authority by denying the request for a pool. Appellants then notified the Rounds that their request for a privacy fence was approved, while the request for an above-ground pool was not. Counsel for the Rounds then sent a letter to appellants' counsel, offering another *Page 3 
opportunity for appellants to approve the Rounds' request for an above-ground swimming pool. Appellants did not offer their approval, and the Rounds initiated the instant action.
 {¶ 4} The parties filed competing motions for summary judgment, respective responses and replies. The trial court denied appellant's motion for summary judgment and granted the Rounds' motion for summary judgment. The trial court ordered that the Rounds may install an above-ground swimming pool on their property. The trial court then scheduled the matter for hearing on the Rounds' claim for monetary damages. After the hearing, the trial court issued a journal entry in which it ordered appellants to pay damages to the Rounds in the amount of $1,220.00. The trial court further noted that the Rounds dismissed their count alleging breach of fiduciary duty, thereby dismissing the three individual defendants, McSweeney, Valenti, and Wido.
 {¶ 5} Appellants timely appealed the trial court's order granting summary judgment in favor of the Rounds, setting forth one assignment of error.
 II. ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN THERE WERE GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE ABOUT WHETHER AN ABOVE GROUND SWIMMING POOL WAS PERMITTED UNDER THE RELEVANT DECLARATIONS AND BYLAWS." *Page 4 
 {¶ 6} Appellants argue that the trial court erred by granting summary judgment in favor of the Rounds after finding that the Association's Declaration of Covenants and Restrictions and its Bylaws do not exclude the installation of an above-ground swimming pool. Appellants further argue that the trial court erred by granting summary judgment in favor of the Rounds based on its finding that the Association's denial of the Rounds' application was unreasonable and contrary to law. This Court agrees.
 {¶ 7} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-WoodwardCo. (1983), 13 Ohio App.3d 7, 12.
 {¶ 8} Pursuant to Civ.R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated;
 (2) the moving party is entitled to judgment as a matter of law; and
 (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 9} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v.Burt (1996), *Page 5 75 Ohio St.3d 280, 293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. State ex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447, 449.
 {¶ 10} The parties do not dispute that the Association's Declaration of Covenants and Restrictions and its bylaw impose contractual obligations on the parties. The Rounds alleged in their complaint that appellants breached the contract by denying the Rounds' request to install an above-ground swimming pool on their property.
 {¶ 11} To prevail on their claim alleging breach of contract, appellees must prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." Kunkle v. Akron Mgt. Corp., 9th Dist. No. 22511,2005-Ohio-5185, at ¶ 18, quoting Doner v. Snapp (1994),98 Ohio App.3d 597, 600.
 {¶ 12} This Court has previously stated:
 "`[T]he overriding concern of any court when construing a contract is to ascertain and effectuate the intention of the parties.' State ex rel. Kabert v. Shaker Hts. (1997), 78 Ohio St.3d 37, 44, quoting Trinova Corp. v. Pilkington Bros., P.L.C (1994), 70 Ohio St.3d 271, 276. The parties' intent `is presumed to reside in the language they chose to employ in this agreement.' Kelly v. Med. Life Ins. Co. *Page 6 
(1987), 31 Ohio St.3d 130, 132. Furthermore, `any assessment as to whether a contract is ambiguous[ ] is a question of law[.]' Watkins v. Williams, 9th Dist. No. 22162, 2004-Ohio-7171, at ¶ 23. If a contract is unambiguous, its interpretation is a matter of law unaccompanied by the need for factual determinations. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 246." Metcalfe v. Akron, 9th Dist. No. 23068, 2006-Ohio-4470, at ¶ 17.
 "The rules of construction for restrictive covenants are informed by the principle that restrictions on the free use of land are disfavored. As a result, when a covenant's language is indefinite, doubtful, and capable of contradictory interpretations, a court must construe the covenant in favor of the free use of land. But if the language in a restrictive covenant is clear and unambiguous, the court must enforce the restriction. Where the lot owner has notice of such a restriction and it is properly part of a general plan or scheme, the restriction is enforceable." (Internal citations omitted.) Haller v. Hickory Creek Homeowners Assn. (Dec. 14, 2001), 1st Dist. No. C-010332.
 {¶ 13} When interpreting the language of a restrictive covenant, it is necessary to determine the intent of the parties as evidenced by the language used in the restriction. Hitz v. Flower (1922),104 Ohio St. 47, 57. "The court must construe the language of the covenant by giving it its common and ordinary meaning in light of the factual circumstances surrounding the writing of the restrictive covenant." Benner v.Hammond (1996), 109 Ohio App.3d 822, 827, citing Arnoff v. Chase (1920),101 Ohio St. 331, 320.
 {¶ 14} The Rounds do not dispute that the Association has the power to grant or reject certain requests by member-homeowners. To support their claim in their motion for summary judgment that appellants "violated the powers granted to *Page 7 
them by the Homeowners Association Declaration," they relied on Article VI, Section 2 of the Association's Covenants and Restrictions.
 {¶ 15} Article VI of the Association's Covenants and Restrictions addresses protective covenants. Section 2 of that article addresses architectural control, and states, in relevant part:
 "The following architectural provisions shall be applicable to the Properties:
 "(a) Plan Approval. No structure shall be placed, erected or installed upon any Lot, no construction (which term shall include within its definition staking, clearing, excavation, grading, and other site work) * * * shall take place until the requirements of this section have been fully met. Prior to any construction, the Owner or builder shall first submit to the Developer (which for the terms of this section shall include its designee) a complete set of building plans for the proposed construction. The Developer shall approve, reject or modify such plans in a writing sent to the Owner or Builder in question not more than thirty (30) days after the plans are submitted to the Developer. * * * The Developer shall review the plans as to the quality of workmanship and design and harmony of external structures with existing structures and as to location in relation to surrounding structures, topography and finish grade elevation. The Developer shall not unreasonably withhold approval of any plans that conform in every way with the Declaration and with the general character of the development on neighboring Lots within the Property.
 "(d) Association's Right of Plan Approval. After expiration of the Development Period or prior assignment of the right of Plan Approved by Developer, the Association shall be responsible for plan approval. The Developer may assign its right of plan approval, or any portion thereof, including approval of modifications to existing Living Units, to the Association." *Page 8 
 {¶ 16} The Rounds are correct that the Declaration of Covenants and Restrictions does not specifically address swimming pools. Nor does it define the term "structure." Therefore, this Court must give that term its common and ordinary meaning in light of the circumstances surrounding the restrictive covenant. Merriam-Webster's Collegiate Dictionary defines "structure" as "something that is constructed." Merriam-Webster's Collegiate Dictionary (11 Ed. 2004) 1238. Black's Law Dictionary defines the term as "any construction, production, or piece of work artificially built up or composed of parts purposefully joined together." Black's Law Dictionary (8 Ed. 2004) 1464. Clearly an above-ground swimming pool constitutes a structure and its construction is, therefore, subject to approval or rejection by the Association.
 {¶ 17} The Rounds argued in their motion that the term "structure" must preclude swimming pools, because subsequent sections of Article VI address specific structures such as mailboxes, sheds and fences. Article VI, however, does not limit its scope to the regulation of "structures." Rather, it enumerates various and diverse protective covenants in 22 distinct Sections, including "Signs," "Exterior Lights," "Livestock and Poultry," "Garbage and Refuse Disposal," "Sight Distance at Intersections," "Exterior Maintenance," "Easements," and "Storm Water Detention Areas," to name a few. As it would be nonsensical to glean the full scope of the term "structure" in Section 2 from provisions such as those proscribing the breeding of birds on any lots or requiring that garbage be *Page 9 
kept from public view, it is equally unreasonable to find that the full meaning of the term "structure" in Section 2 is enunciated in the other distinct Sections of Article VI.
 {¶ 18} In addition, the Article VI Sections which address other structures, such as mailboxes, chain link fences and signs, either preclude such structures or demand specific types of structures, without any provision for a homeowner's application for approval.
 {¶ 19} This Court finds that the term "structure" in Article VI, Section 2, on which the Rounds rely, is not ambiguous and that its common and ordinary meaning encompasses swimming pools, which are subject to approval by the Association. Accordingly, the Rounds have failed to meet their initial burden under Dresher to show that there is no genuine issue of material fact regarding the applicability of Article VI, Section 2 of the Declaration of Covenants and Restrictions to their request for approval of the installation of an above-ground swimming pool on their property.
 {¶ 20} The Rounds further argued in their motion for summary judgment that appellants' denial of their request for approval of an above-ground swimming pool was arbitrary, capricious and unreasonable. This Court disagrees.
 {¶ 21} The Rounds argued in their motion for summary judgment that the Declaration of Covenants and Restrictions gives no guidance or notice to a homeowner as to the kind of pool which will qualify for the Association's consent. *Page 10 
There is no dispute that the Association has approved the construction of an in-ground pool for another homeowner. The Rounds admit that the Association purported to deny their request based on safety concerns and appearance. They argued, however, that these grounds are arbitrary, capricious and unreasonable.
 {¶ 22} Again, Article VI, Section 2 provides for review of such requests on the basis of "the quality of workmanship and design and harmony of external structures with existing structures and as to location in relation to surrounding structures, topography and finish grade elevation." Certainly, the design of a swimming pool may give rise to safety concerns. Furthermore, the appearance of the pool is relevant to the idea of harmony with existing structures. Under these circumstances, this Court finds that the Rounds have failed to meet their initial Dresher burden to show that no genuine issue of material fact exists regarding whether the Association acted in a manner that was arbitrary, capricious and unreasonable when it denied the Rounds' request for the installation of an above-ground pool. Appellants' assignment of error is sustained.
 III. {¶ 23} Appellants' sole assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is reversed, and the matter remanded for further proceedings consistent with this decision.
 Judgment reversed, and cause remanded. *Page 11 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellees.
SLABY, P. J. WHITMORE, J. CONCURS